IME v DBS

Docket No. 316274. Submitted August 5, 2014, at Grand Rapids. Decided
August 14, 2014, at 9:05 a.m.

IME, through her next friend, GE, filed a petition in the Allegan
Circuit Court seeking an ex parte personal protection order (PPO)
against DBS. DBS, a juvenile, in a previous delinquency proceed-
ing was found to have committed first- and second-degree criminal
sexual conduct against petitioner. The court, Margaret Z. Bakker,
J., granted the petition. Respondent moved to modify or terminate
the PPO, asserting that the statute under which the PPO was
granted, MCL 600.2950a(2)(a), was unconstitutional. Following a
hearing, the court amended the order to allow respondent to
possess a firearm while hunting with family members. The court
took the issue of the constitutionality of the statute under advise-
ment. The court subsequently determined that respondent had
failed to demonstrate that the statute was unconstitutional and
denied respondent's motion to terminate the order. Respondent
appealed.

The Court of Appeals *held*:

1. Under MCL 600.2950a(2)(a), a person may petition a court
to enter a PPO to restrain or enjoin an individual from engaging in
certain acts if that individual has been convicted of a sexual
assault of the petitioner. Consistent with the minimum require-
ments of the Due Process Clause, the respondent to a petition for
a PPO under MCL 600.2950a(2)(a) has the ability to contest the
petition by presenting evidence that he or she has not in fact been
convicted of sexually assaulting the petitioner. The fact that the
respondent's status satisfies the requirement for issuing a PPO
under the statute does not result in a violation of procedural due
process because the respondent received all the process to which
he or she was due at the criminal proceeding that led to conviction.
The Legislature also enacted additional procedural safeguards to
ensure that the orders are properly issued and subject to review.
The statute requires a demonstration of exigent circumstances
before an ex parte PPO may be issued, provides for rescission of a
PPO on motion by the respondent, and allows a respondent who
has not received notice of the PPO to avoid arrest for an unwitting

violation of the PPO. These safeguards are sufficient to protect a respondent's right to procedural due process, and, on the facts of this case, respondent was given a meaningful opportunity to be heard and to seek appropriate modifications of the PPO.

2. To determine whether a statute is unconstitutional, courts must examine whether the statute interferes with a fundamental right. If the right asserted is not fundamental, the government's interference with that right need only be reasonably related to a legitimate government interest. When issuing a PPO under MCL 600.2950a(2)(a), a court may restrain or enjoin a number of different acts, which are identified in MCL 600.2950a(3), but the court is not required to restrain or enjoin the respondent from engaging in any of those acts, and most of those acts do not implicate fundamental rights. To the extent that the court has the power to restrain or enjoin the purchase or possession of firearms, the restriction is a reasonable exercise of the state's police power because it allows the court to make a judgment regarding whether and to what extent the PPO should restrict the right to bear arms. Therefore, the statute does not on its face impair a fundamental right. With the enactment of MCL 600.2950a(2)(a), the Legislature intended to protect the victims of sexual assault from further victimization by the perpetrator of the sexual assault. The Legislature could have reasonably concluded that the victims of sexual assault are particularly susceptible to further victimization by the perpetrator of the assault, and that they require additional measures to protect them from their previous attackers beyond those provided under MCL 600.2950 and MCL 600.2950a(1). Therefore, the Legislature's decision to allow victims of sexual assault to seek personal protections orders against the persons convicted of assaulting them is reasonably related to the legitimate government purpose of protecting victims of sexual assault from further victimization. The flexibility given to the court when fashioning the PPO also ensures that the liberty interests of respondents are not arbitrarily or unreasonably restrained. The trial court correctly ruled that MCL 600.2950a(2)(a) passes constitutional scrutiny.

Affirmed.

1. STATUTES — PERSONAL PROTECTION ORDERS AGAINST PERPETRATORS OF SEXUAL ASSAULTS — CONSTITUTIONAL LAW — PROCEDURAL DUE PROCESS.

Under MCL 600.2950a(2)(a), a person may petition a court to enter a personal protection order to restrain or enjoin an individual from engaging in certain acts if that individual has been convicted of a

sexual assault of the petitioner; the statute contains sufficient procedural safeguards to protect a respondent's right to procedural due process.

2. STATUTES — PERSONAL PROTECTION ORDERS AGAINST PERPETRATORS OF SEXUAL ASSAULTS — CONSTITUTIONAL LAW — SUBSTANTIVE DUE PROCESS.

When issuing a personal protection order under MCL 600.2950a(2)(a), a court may restrain or enjoin a number of different acts, but the statute does not on its face impair a fundamental right; the Legislature's decision to allow victims of sexual assault to seek personal protections orders against the persons convicted of assaulting them is reasonably related to the legitimate government purpose of protecting victims of sexual assault from further victimization; the flexibility given to the court when fashioning the personal protection order ensures that the liberty interests of respondents are not arbitrarily or unreasonably restrained; MCL 600.2950a(2)(a) passes constitutional scrutiny.

*Law Office of Leo Hendges, PLLC* (by *Leo T. Hendges*), for respondent.

Before: M. J. KELLY, P.J., and SAWYER and HOEKSTRA, JJ.

PER CURIAM. Respondent, DBS, appeals by right the trial court's decision to grant the request for a personal protection order (PPO) by petitioner, IME, through her next friend, GE, who is her father. Because we conclude there were no errors warranting relief, we affirm.

### I. BASIC FACTS

These events have their origin in a prior incident that occurred when respondent was just 12 years of age. He was visiting the home of petitioner's family at the time. GE walked into a room and discovered respondent with petitioner, who was just 6 years of age. Petitioner was in a state of undress.

The county prosecutor initiated a delinquency proceeding against respondent in September 2010. At the proceeding, the jury heard evidence that respondent touched petitioner's vagina and performed cunnilingus on her. The jury found him guilty of one count each of criminal sexual conduct in the first degree and criminal sexual conduct in the second degree.

In October 2012, petitioner's father petitioned for a PPO against respondent on his daughter's behalf. In a statement attached in support of the petition, petitioner's mother noted that petitioner was a victim of sexual assault and described the incident at a high school football game that she attended with her daughter (age 9 as of the petition), which precipitated the need for a PPO. She stated that her daughter became "scared and panicked" and began to cry after she saw respondent at the game. She was alarmed because respondent was "walking around and staring at her." Petitioner's mother argued that, "[a]s a victim[,] she [petitioner] shouldn't have to leave school functions and activities because he [respondent] is there." "Furthermore," she stated, "he shouldn't be allowed at school [functions] or around other young children." Petitioner's father asked the court to issue an ex parte order prohibiting respondent from "following" or "approaching or confronting" petitioner "in a public place or on private property."

The trial court granted the petition on the ground that respondent had committed a sexual assault against petitioner. However, it expanded the scope of the order to include limitations beyond those requested in the petition. The court barred respondent from following petitioner, appearing at her workplace or residence, approaching or confronting her in a public place or on

private property, entering onto or remaining on property owned, leased, or occupied by her, sending mail or other communications to her, contacting her by telephone, placing an object on or delivering an object to property owned, leased, or occupied by her, or threatening to kill or physically injure her. In addition, the court prohibited him from purchasing or possessing a firearm. Respondent received service of the order in November 2012. The order stated that it would remain in effect until October 2013.

In December 2012, respondent moved to modify or terminate the PPO. He maintained that the statute allowing courts to issue a PPO on the basis of a single prior sexual assault is unconstitutional. He argued that it is overbroad because it restricts "more conduct than is necessary to accomplish the goal of protecting victims of convicted sex offenders." Respondent also asserted that the statute is impermissibly overbroad because there are "no time limitations built into this law"; the petitioner could obtain a PPO every year for the rest of her life. Respondent further argued that the statute is unconstitutional because it allows a court to restrain the respondent's personal liberties even after he or she has served his or her sentence. In his brief in support of his motion, respondent also claimed that the PPO violated his right to equal protection of the laws, his right to exercise his religion, his right to freely associate, his right to bear arms, his right against unreasonable searches and seizures, and his right not to be subjected to double jeopardy.

The trial court held a hearing on the motion in February 2013. At the hearing, the trial court noted that respondent had not challenged the underlying facts, but was challenging the constitutionality of the statute alone. Respondent's lawyer agreed that that was the case.

At the hearing, respondent's lawyer explained how the PPO stripped respondent of his ability to lead a normal life on the basis of a single underlying conviction for a sex crime. Now respondent cannot do the things that he likes to do:

> In this case, go to a football game where [respondent] is back in school . . . . He actually was on the team for a period. I am not sure if he still is now. But he likes going to football games. And he--he's a fifteen year old kid now. He scans the stands to see if his friends are there. And in this case, apparently [petitioner's family] felt that he was staring at them. And they feel that that made [petitioner] nervous, so they filed for a personal protection order.

Respondent's lawyer also explained that respondent cannot go hunting with his family and, if petitioner's family suddenly chose to attend his church, he would be precluded from practicing his religion. And these limitations, he emphasized, can be renewed in perpetuity under the statute. It is this breadth, he maintained, that makes the statute unconstitutional:

> In this case, the parties live in similar towns. They go to the grocery store. They run into each other. That's going to happen. There is no showing that [respondent or his family] have in any way tried to approach them, tried to come to their house, tried to mail things. But they are still--[respondent] is subject to a personal protection order. . . .
>
> *    *    *
>
> He is back in the public schools. He is trying to get on with his life. Fortunately he doesn't have to register on the sex offender registry, because that was amended. But now he is subject to personal protection orders and if he wants to buy a gun to go hunting this next year with his father in Cadillac, at his uncle's property, he can't do that because he can't own a gun. If that is the way that the order is entered.

Petitioner's father spoke on his daughter's behalf and argued that the statute was proper. He related that he too had previously made a bad decision and had to live with the consequences: "And we all--you know, ten years ago, I decided to do something and commit two felonies. And because of that decision, I have to live with not being able to have a gun, not being able to do certain things because of my criminal record." But, he stated, it was his job to protect his daughter and "now she feels that she is unsafe." Petitioner's father reiterated that he was not trying to make respondent miserable: "we went two years without having any issues until that day." But after the incident he wanted to "make sure that she is protected." The trial court asked petitioner's father if it would be all right to amend the order to allow respondent to hunt, and he agreed: "You know what, I don't care if he can possess--I don't want to ruin his--everything about his life. . . . [T]hat's not my point here."

The trial court took the motion under advisement, but left the existing order in place pending its decision. It, however, amended the order to allow respondent to possess a firearm while hunting with family members.

In April 2013, the trial court issued its opinion and order on the motion to modify or terminate the PPO. The trial court determined that respondent had not met his burden to demonstrate that the statute was unconstitutional. The court explained that respondent had to show that the statute's overbreadth was "real and substantial" when judged in relation to its legitimate sweep. Although respondent identified possible situations in which the PPO authorized under the statute might interfere with his exercise of certain rights, those possibilities were merely theoretical rather than realistic dangers arising from the statute itself. The trial

court also rejected respondent's contention that the statute violated the prohibition against multiple punishments because any punishment would be for the violation of the PPO and not for committing the original sexual assault. Finally, it concluded that the statute met the minimum requirements for due process. For these reasons, the trial court denied respondent's motion to the extent that it asked the trial court to find the statute unconstitutional or to construe it in a way to impose additional requirements.

This appeal followed.

## II. CONSTITUTIONALITY

### A. STANDARDS OF REVIEW

On appeal, respondent argues that MCL 600.2950a(2)(a) is unconstitutional because it allows a petitioner to obtain a PPO against a respondent solely on the basis that the respondent sexually assaulted the petitioner or provided the petitioner with obscene material. Respondent asserts that by creating this automatic right to a PPO, the Legislature eliminated the need for the petitioner to demonstrate that he or she needs a PPO in order to ensure his or her safety, which violates the respondent's right to procedural due process.[1] Respondent also claims that the statute is unconstitutional because it does not satisfy the rational-basis test.

This Court reviews de novo a challenge to the constitutionality of a statute. *Bonner v Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014). This Court also reviews de novo whether the trial court properly selected, interpreted, and applied a statute. *Kincaid v Cardwell,*

---

[1] We note that respondent has not challenged whether MCL 600.2950a(2)(a) applies to juvenile adjudications.

300 Mich App 513, 522; 834 NW2d 122 (2013). This
Court must presume that MCL 600.2950a(2)(a) is con-
stitutional unless its " 'invalidity appears so clearly as
to leave no room for reasonable doubt that it violates
some provision of the Constitution . . . .' " *Bonner*, 495
Mich at 221, quoting *Cady v Detroit*, 289 Mich 499, 505;
286 NW 805 (1939).

### B. PROCEDURAL DUE PROCESS

Although respondent argues that MCL 600.2950a(2)(a)
is unconstitutional because it denies respondents a
meaningful opportunity to be heard, he does not
actually address the procedural safeguards that the
Legislature put into place to protect persons who are
respondents in a proceeding under the statute. In-
deed, he appears to concede that he received notice
and had an opportunity to contest the PPO; he simply
does not like the fact that the statute provides the
victims of sexual assault with an automatic right to
obtain a PPO against the persons convicted of attack-
ing them. Nevertheless, we shall examine the safe-
guards of the statutory scheme.

Before the state may deprive persons of liberty or
property, due process requires that the person be given
notice of the proceedings and an opportunity to be
heard in a meaningful time and manner. *Dow v Michi-
gan*, 396 Mich 192, 206-207; 240 NW2d 450 (1976). Any
additional procedural protections required by due pro-
cess are flexible and depend on the particular situation.
*In re Brock*, 442 Mich 101, 110-111; 499 NW2d 752
(1993). Generally, three factors will be considered when
determining what is required by due process: (1) the
private interest affected by the official action, (2) the
risk of erroneous deprivation of the interest through

the procedures used, and (3) the probable value, if any, of additional or substitute procedural safeguards. *Id*. at 111.

The Legislature has provided courts with the authority to restrain or enjoin persons from engaging in certain conduct. The statutory provisions governing such orders are found under MCL 600.2950 and MCL 600.2950a. Under MCL 600.2950a, which is at issue here, the Legislature provided for personal protection orders against persons other than those with whom the petitioner has a domestic relationship. Originally, this statute only permitted a petitioner to obtain a PPO to restrain or enjoin the respondent from engaging in the conduct criminalized under MCL 750.411h or MCL 750.411i, which statutes prohibit what is commonly referred to as stalking. See 1992 PA 262. However, the Legislature determined that certain other potentially vulnerable persons should have the power to petition for personal protection orders to restrain persons who pose a danger to them.

The current statute allows a petitioner to obtain a PPO under three circumstances. A petitioner may obtain a PPO enjoining the respondent from engaging in the conduct prohibited under MCL 750.411h, MCL 750.411i, or MCL 750.411s, when the petitioner alleges that the respondent engaged in acts that would constitute a violation of one of those statutes without regard to whether the respondent has actually been charged or convicted of such a violation. MCL 600.2950a(1). A petitioner may also seek a PPO to enjoin or restrain a respondent from engaging in certain conduct—listed under MCL 600.2950a(3)—when the petitioner has "been subjected to, threatened with, or placed in reasonable apprehension of sexual assault by the individual to be enjoined." MCL 600.2950a(2)(b). Finally, a

petitioner may seek a PPO to restrain or enjoin the respondent from engaging in the conduct listed under MCL 600.2950a(3) when the "respondent has been convicted of a sexual assault of the petitioner" or has been "convicted of furnishing obscene material to the petitioner . . . ." MCL 600.2950a(2)(a).

Consistent with minimum due process, the respondent to a petition for an order under MCL 600.2950a(2)(a) has the ability to contest the petition by presenting evidence that he or she has not in fact been convicted of sexually assaulting the petitioner or furnishing obscene material to the petitioner. And, with regard to those respondents who have been convicted of sexually assaulting the petitioner, the fact that his or her status satisfies the minimum requirements for issuing a PPO does not—by itself—result in a violation of procedural due process; the respondent received "all the process to which he [or she] was due" at the criminal proceeding resulting in his or her conviction. *People v Minch*, 493 Mich 87, 94; 825 NW2d 560 (2012).

The Legislature also enacted procedural safeguards to ensure that the orders are properly issued and subject to review. The petitioner has the burden to establish grounds for the issuance of a PPO. See MCL 600.2950a(1) and MCL 600.2950a(2). The order must be served on the respondent and, in the case of minors, on the respondent's parent, guardian, or custodian. MCL 600.2950a(18). When seeking an ex parte order, the petitioner must establish "that immediate and irreparable injury, loss, or damage will result from the delay required to effectuate notice . . . ." MCL 600.2950a(12). A respondent to a petition under MCL 600.2950a(2)(a) also has the right to file and have a hearing on his or her motion to rescind or modify the PPO. MCL 600.2950a(13) and MCL 600.2950a(14). Similarly, a respondent named in a PPO

issued under MCL 600.2950a who has not received notice of the PPO cannot be arrested unless given actual notice and the opportunity to comply with the order. MCL 600.2950a(22). Finally, even after the expiration of the period within which to request a hearing, the respondent may request a hearing to rescind or modify the PPO on the basis of a showing of good cause. See MCL 600.2950a(13).

These procedural safeguards are substantially similar to the safeguards provided under MCL 600.2950 for the issuance of a PPO involving domestic relations. And this Court has already determined that those safeguards were sufficient to protect a respondent's right to procedural due process. See *Kampf v Kampf*, 237 Mich App 377, 383-386; 603 NW2d 295 (1999). Accordingly, for the reasons stated in *Kampf*, we conclude that MCL 600.2950a provides sufficient procedural safeguards to satisfy due process.

Even considering the facts of this case, it is evident that these procedural safeguards afforded respondent a meaningful opportunity to be heard and ensured that his liberty was not improperly limited. Respondent received notice of the PPO and had the opportunity to file a motion to rescind or modify the order. Notably, although the statute requires the trial court to issue a PPO on a petitioner's request when the petitioner establishes that the person to be enjoined has been convicted of sexually assaulting the petitioner, the statutory scheme leaves it to the trial court to tailor the order to the specific circumstances—that is, it does not require the trial court to enjoin any specific conduct. See MCL 600.2950a(3). Moreover, the trial court had the discretion to modify or rescind the order on the basis of a proper motion. See MCL 600.2950a(13) and (14). And the trial court actually modified the order at

issue after respondent's lawyer noted that the order would preclude respondent from hunting with his family. Had the trial court felt it appropriate, it could have removed the firearms restrictions altogether. Finally, although petitioner can renew her request for a PPO in perpetuity, the trial court still has the discretion to take into consideration the specific facts applicable when fashioning a new or renewed PPO. Even when considered on the facts specific to this case, the statutory scheme provided respondent with a meaningful opportunity to be heard and the opportunity to seek appropriate modifications to the order.

### C. SUBSTANTIVE CHALLENGE

Although framed as a procedural challenge, respondent's claim on appeal bears the hallmarks of a substantive challenge; specifically, he appears to argue that MCL 600.2950a(2)(a) is unconstitutional because it impermissibly allows the petitioner to obtain an order to restrain or enjoin the respondent without a sufficiently high burden of proof, which, he maintains, is irrational. Stated another way, he challenges whether the Legislature has the authority to enact a statute that allows a person to petition the trial court for a PPO to restrain or enjoin another person on the sole basis that the individual to be restrained has been convicted of sexually assaulting the petitioner. In respondent's view, the Legislature cannot enact such a statute because the mere fact that a person has sexually assaulted another person in the past is not sufficiently indicative of whether the perpetrator poses a future danger to his or her victim. He also indicates that it is fundamentally unfair that the statute does not have a "sunset provision."

In order to properly determine whether a statute is unconstitutional, courts must first examine whether

the statute interferes with a fundamental right; if the right asserted is not fundamental, "the government's interference with that right need only be reasonably related to a legitimate government interest." *Bonner*, 495 Mich at 227. Before the trial court, respondent's lawyer argued that the statute impermissibly allows a court to issue a PPO that—in theory—could interfere with a variety of fundamental rights, especially if the petitioner is vindictive.[2] He stated that the PPO could interfere with respondent's right to equal protection of the laws, his right to exercise his religion, his right to freely associate, his right to bear arms, his right against unreasonable searches and seizures, and his right not to be subjected to double jeopardy. Respondent's lawyer has not repeated these arguments on appeal with the exception of a brief mention of the fact that the order limits respondent's right to purchase and possess firearms.

In any event, because he has challenged the facial validity of the statute, the specific facts surrounding respondent's claim are inapposite; the fact that the statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to invalidate it. *Bonner*, 495 Mich at 223. Instead, respondent must show that no set of circumstances exists under which the statute could be said to be valid. *Id*. A "facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances

---

[2] This Court has already considered the possibility that a party may inappropriately use the procedures for obtaining a PPO and determined that the trial courts are in the best position to recognize and address that possibility through the exercise of their discretion to grant, rescind, or modify the PPO. *Pickering v Pickering*, 253 Mich App 694, 702 n 3; 659 NW2d 649 (2002).

exists under which the Act would be valid." *United States v Salerno*, 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987).

When issuing a PPO under MCL 600.2950a(2)(a), a trial court may restrain or enjoin a variety of conduct. It may restrain or enjoin the individual against whom the PPO is sought from "[e]ntering onto premises," "[t]hreatening to sexually assault, kill, or physically injure [the] petitioner or a named individual," "[p]urchasing or possessing a firearm," "[i]nterfering with the petitioner's efforts to remove the petitioner's children or personal property from premises that are solely owned or leased by the individual to be restrained or enjoined," "[i]nterfering with the petitioner at the petitioner's place of employment or education or engaging in conduct that impairs the petitioner's employment or educational relationship or environment," "[f]ollowing or appearing within the sight of the petitioner," "[a]pproaching or confronting the petitioner in a public place or on private property," "[a]ppearing at the petitioner's workplace or residence," "[e]ntering onto or remaining on property owned, leased, or occupied by the petitioner," "[c]ontacting the petitioner by telephone," "[s]ending mail or electronic communications to the petitioner," "[p]lacing an object on, or delivering an object to, property owned, leased, or occupied by the petitioner," "[e]ngaging in conduct that is prohibited under" MCL 750.411s, or "[a]ny other specific act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence or sexual assault." MCL 600.2950a(3)(a) to (n). The trial court is, however, not required to restrain or enjoin the respondent from engaging in any one or more of these types of conduct and most of the conduct listed does not on its face implicate a fundamental right. Even with regard to a

person's right to bear arms, this Court has held that the analogous statutory scheme found under MCL 600.2950 is a reasonable exercise of the state's police power because it allows the trial court to "make a judgment" regarding whether and to what extent the PPO should include a restriction on the right to bear arms. See *Kampf*, 237 Mich App at 383 n 3. Because the statute does not on its face impair a fundamental right, this Court must uphold the statute if there is a "reasonable relationship between the governmental purpose and the means chosen to advance that purpose." *Bonner*, 494 Mich at 230.

Respondent argues that MCL 600.2950a(2)(a) is irrational because it imposes no burden on the petitioner; rather, it allows a trial court to issue a PPO without any showing that the PPO is reasonably necessary for the petitioner's protection. Respondent, however, fails to see that a single incident of sexual assault is indicative of the danger that the perpetrator poses to the victim—perhaps more so than the other conduct for which a petitioner may obtain a PPO. In addition, he improperly equates the ease with which a petitioner can marshal his or her proofs with the nature of the burden to be demonstrated in order to justify the issuance of a PPO.

Under MCL 600.2950a(2)(a), the Legislature placed the burden on the petitioner (in relevant part) to demonstrate that the person to be restrained has been convicted of sexually assaulting the petitioner. Admittedly, once a person has been convicted of sexually assaulting another person, presenting proof of that fact will not be burdensome. But that does not mean that the burden is meaningless or even less onerous than the burden of proof applicable to the other statutes governing the issuance of a PPO. In the domestic relations context, a petitioner can establish the right to a PPO by

alleging facts that would permit the trial court to find that there is reasonable cause to believe that the person to be restrained might commit an act that could be enjoined. MCL 600.2950(4). That is, the petitioner can obtain a PPO against the person to be enjoined without having to prove that the person has actually done anything illegal. Similarly, a petitioner can obtain a restraining order under MCL 600.2950a(1) by alleging that the person to be restrained engaged in acts that constitute stalking without the need to show that the person to be restrained has actually been charged or convicted of violating the applicable statutes. By contrast, to establish the right to a PPO under MCL 600.2950a(2)(a), in relevant part, the petitioner must establish that a jury has already found beyond a reasonable doubt that the person to be restrained sexually assaulted the petitioner. That is, the petitioner must have endured a sexual assault, must have gone through the difficult experience of a criminal prosecution, which likely included testifying against the person to be enjoined, and must have convinced a jury to unanimously find beyond a reasonable doubt that the person to be enjoined actually committed the sexual assault. When considered in full context, meeting the qualifications for a PPO under MCL 600.2950a(2)(a) is more onerous than meeting the qualifications for one under MCL 600.2950(4) and MCL 600.2950a(1).

With the enactment of MCL 600.2950a(2)(a), the Legislature intended to protect the victims of sexual assault from further humiliation and victimization at the hands of the person who perpetrated the sexual assault. Sexual assault is a particularly heinous crime that—as courts have recognized—commonly results in psychological injury. See, e.g., *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008) (recognizing that sexual assault is "most certainly heinous"); *People v Beckley*,

434 Mich 691, 721; 456 NW2d 391 (1990) (opinion by BRICKLEY, J.) (characterizing sexual assault as one of society's most heinous offenses); *Jenkins v McCoy*, unpublished opinion per curiam of the United States Court of Appeals for the Fourth Circuit, issued September 14, 1994 (Case No. 93-6919), p 3 (stating that any layman knows about the psychological injury associated with rape). On that basis, the Legislature could reasonably conclude that the victims of sexual assault—more so than the victims of other crimes—are particularly susceptible to further victimization by the perpetrators of the assault, whether inadvertently or through deliberate acts directed to that purpose. Moreover, the perpetrators of sexual assault may be intimately acquainted with their victims and may return to their communities after serving their sentences. From that, the Legislature could reasonably infer that the person who sexually assaulted the victim continues to be a danger to his or her victim. Given the nature and extent of the harm caused by sexual assaults and the heightened possibility that the perpetrators might again directly or indirectly harm their victims, the Legislature could reasonably conclude that the victims of sexual assault require additional measures to protect them from their attackers beyond those provided under MCL 600.2950 and MCL 600.2950a(1).

The Legislature's decision to allow the victims of sexual assault to seek personal protection orders against the persons convicted of assaulting them is reasonably related to the legitimate government purpose of protecting the victims of sexual assault from further victimization. See *Bonner*, 495 Mich at 227. Moreover, trial courts have substantial discretion to fashion a PPO that balances the petitioner's need for appropriate protection and the respondent's liberty interests. The respondent has the opportunity to file a

motion to rescind or modify the order and is entitled to a hearing on that motion. At the hearing, the respondent can argue and present evidence that the order should be limited or even rescinded under the facts peculiar to the case. The trial court also has the discretion to set the term of the PPO. See MCL 600.2950a(13); MCL 600.2950a(11)(d). By setting an appropriate term, the trial court can ensure that the order will be subject to periodic review. This flexibility advances the Legislature's interest in protecting the victims of sexual assault while ensuring that the perpetrators' liberty interests are not arbitrarily or unreasonably restrained.

For all these reasons, MCL 600.2950a(2)(a) passes constitutional scrutiny.

### III. CONCLUSION

Respondent failed to demonstrate that MCL 600.2950a(2)(a) is unconstitutional. Because respondent has not otherwise challenged the trial court's exercise of discretion in fashioning and imposing the PPO, we affirm.

Affirmed.

M. J. KELLY, P.J., and SAWYER and HOEKSTRA, JJ., concurred.