STATE OF MICHIGAN
COURT OF APPEALS

| | |
|---|---|
| *In re* GONZALES/MARTINEZ, Minors. | FOR PUBLICATION<br>May 5, 2015<br>9:15 a.m.<br><br>No. 324168<br>Macomb Circuit Court<br>Family Division<br>LC No. 2013-000318-NA |

Before: M. J. KELLY, P.J., and WILDER and K. F. KELLY, JJ.

PER CURIAM.

Respondent appeals by right the order terminating her parental rights to her two children, MG and HM, under MCL 712A.19b(3)(b)(*ii*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j). Because we conclude there were no errors warranting relief, we affirm.

## I. BASIC FACTS

MG and HM were removed from respondent's care and placed with relatives after it was discovered that respondent's boyfriend had sexually assaulted both children. The children told a worker from the Department of Human Services that when they first told their mother of the abuse, she slapped HM and called MG a liar. Respondent was allowed supervised parenting time, but the Department expressed concern about the visits after a worker observed respondent "coaching" MG about the sexual assault case. A mental health professional who evaluated respondent recommended suspending respondent's parenting time and the court agreed.

The Department initially sought immediate termination of respondent's parental rights, but withdrew the petition and offered respondent a parent agency agreement. During a later hearing, it was revealed that respondent had kept in contact with her boyfriend after his arrest. Respondent also missed several drug screens and tested positive for cocaine. Because of these events, the Department again petitioned for the termination of respondent's parental rights.

At a hearing on the petition, respondent admitted that she continued to have contact with her boyfriend. Two police officers also testified about an incident that occurred before the Department offered respondent an agency agreement; respondent had assaulted an elderly woman with whom she lived. There was also a psychological report in which the author wrote that respondent had difficulty with the part of her brain that controls emotional stability and aggression. It was also revealed that respondent had criminal charges pending against her. Elizabeth Heath, a foster-care specialist working for the Department, submitted evidence that

-1-

respondent had hallucinations and had been inconsistent with seeking treatment, including refusing to engage in in-patient treatment. Respondent also had positive drug tests for cocaine from May through July and had twice been hospitalized for overdosing.

Respondent was then living with an 83-year-old man, and he indicated that they were sexually involved. On one occasion when Heath went to the residence to deliver a subpoena, she found respondent passed out on the couch. Respondent's elderly roommate told Heath that he had seen respondent drinking and had given her pills. Respondent was unemployed throughout the proceedings, but did receive social security. Heath testified that both children were doing well in their current placement with their aunt and uncle. Heath discussed a possible guardianship with the children's aunt and uncle, but the children's caregivers were afraid that respondent might continue to have contact with them and they did not feel safe around her.

The hearing referee found that the Department had established by clear and convincing evidence grounds for termination under MCL 712A.19b(3)(b)(*ii*), (3)(g), and (3)(j). Regarding § 19b(3)(b)(*ii*), the referee noted respondent's refusal to believe the allegations of sexual abuse and continued relationship with her children's alleged abuser. The referee also felt that respondent's continued problems with drug use, her lack of appropriate housing, her ongoing mental health issues, the number of appointments she had missed, her failure to enter an in-patient treatment program, and the criminal charges she was facing, implicated § 19b(3)(g). As for § 19b(3)(j), the referee referred to respondent's lack of stability, the ongoing drug problems, and the criminal activity. However, the referee found that there was not adequate grounds for terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (3)(c)(*ii*).

The referee further found that termination was in the children's best interests. The referee stated that the children needed permanency and safety, which respondent could not provide. The referee also found it noteworthy that the children had been traumatized while in respondent's care and were scared of her. The referee stated that the children needed finality beyond a mere guardianship. The trial court adopted the referee's findings and entered the order of termination.

Respondent now appeals in this Court.

## II. TERMINATION OF PARENTAL RIGHTS

### A. STANDARDS OF REVIEW

This Court reviews a trial court's factual findings at a termination hearing for clear error. MCR 3.977(K). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). However, this Court reviews de novo whether the trial court properly selected, interpreted, and applied the relevant statutory provisions. *IME v DBS*, 306 Mich App 426, 433; 857 NW2d 667 (2014).

## B. ANALYSIS

The Department had the burden to establish the existence of a ground for termination by clear and convincing evidence. *In re JK*, 468 Mich at 210. However, only one statutory ground need be proved to support the termination of a parent's parental rights. *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000). In reviewing a trial court's findings, this Court must give special regard to the trial court's superior ability to judge credibility. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

A trial court may terminate a parent's parental rights under MCL 712A.19b(3)(b)(*ii*), if there is clear and convincing evidence that the "child or a sibling of the child has suffered physical injury or physical or sexual abuse" and the parent had "the opportunity to prevent the physical injury or physical or sexual abuse [and] failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home." Termination is appropriate under MCL 712A.19b(3)(g), if the parent "without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Finally, the trial court may terminate a parent's parental rights under MCL 712A.19b(3)(j), when there "is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

There was testimony and evidence that established that respondent's boyfriend had sexually abused the children. There was also evidence that respondent did not believe her children's revelations about the abuse, including evidence that she called MG a liar. And Heath testified that HM reported that respondent "did nothing to stop" the abuse after the child told respondent about it. This was clear and convincing evidence that respondent had the opportunity to prevent the abuse, but failed to do so.

Respondent contends that the record does not support termination on this ground because the children's abuser is currently in jail and going to be deported. Even assuming this to be true, the trial court was still justified in finding that termination was warranted under this ground. The legislature did not require that there be clear and convincing evidence that the children were at risk from the same abuser. Rather, MCL 712A.19b(3)(b)(*ii*) addresses the harm occasioned by a parent who is unwilling or unable to protect his or her children from abuse. The evidence established that respondent placed her desire to be with her boyfriend—despite his abuse—over the needs of her children, and there was evidence that she would likely continue to place her personal desires over her children's welfare.

The trial court did not clearly err when it found that the Department had established by clear and convincing evidence that termination was warranted under MCL 712A.19b(3)(b)(*ii*). *In re JK*, 468 Mich at 209-210.

With respect to MCL 712A.19b(3)(g), there was evidence that respondent failed to comply with the terms of her agency agreement. See *In re JK*, 468 Mich at 214 (stating that a parent's failure to comply with the agency agreement is evidence of an inability to provide proper care and custody). Respondent tested positive for cocaine, had called MG a liar with

respect to the allegations of sexual abuse, and had been charged with retail fraud. She was found passed out in the home of the 83-year-old man she was living with after consuming alcohol and pills. This was plainly not a stable housing situation. Additionally, there was evidence that respondent was not consistent in attending counseling and treatment sessions, was unemployed and only received a small amount of monthly income in the form of social security disability, and failed to adequately address her mental health issues. Therefore, even though the time between the imposition of the agency agreement and termination was only 13 weeks, respondent's actions demonstrated that she was unable to alter her behavior and provide a stable home.

The trial court did not clearly err when it found that the Department had shown by clear and convincing evidence that MCL 712A.19b(3)(g) justified termination. *In re JK*, 468 Mich at 209-210.

Finally, there was ample evidence to suggest that the children would be subject to harm if returned to respondent's care. See MCL 712A.19b(3)(j). There was evidence that respondent had difficulty controlling her emotional stability and aggression, and evidence from two officers suggested that respondent had committed a violent assault on an older woman. Heath testified that respondent slapped HM when the child told respondent of the sexual abuse. And the children's current caretakers, their aunt and uncle, do not feel that respondent is safe. There was also testimony that MG specifically thinks that respondent will kill him if he is returned to her. Accordingly, it was not clearly erroneous for the trial court to conclude that there was a reasonable likelihood that the children would be harmed if returned to respondent. *In re JK*, 468 Mich at 209-210.

## C. BEST INTERESTS

Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children. MCL 712A.19b(5); *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013) (holding that the petitioner must prove by a preponderance of the evidence, rather than by clear and convincing evidence, that termination is in the child's best interests). The children's bond to the parent, the parent's parenting ability, and the children's need for permanency, stability, and finality are all factors for the court to consider in deciding whether termination is in the best interests of the children. *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014). A child's placement with relatives is a factor that the trial court is required to consider. *In re Mason*, 486 Mich 142, 163-164; 782 NW2d 747 (2010). Generally, a child's "placement with relatives weighs against termination." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012).

In the present case, the children were placed with their aunt and uncle. However, a guardianship had been considered and rejected because the relatives did not feel safe around respondent and did not want to have contact with her. Given the facts, that fear is understandable. There was evidence that respondent had violently attacked an older women, had not successfully addressed her substance abuse and mental health issues, and was not motivated to make the necessary changes to address her substance abuse and mental health issues. She also

continued to have contact with the children's abuser, even going so far as to indicate her desire to start a family with him.

The children's relatives were willing to adopt them, and both children were excelling in their new environment. The trial court's finding that termination was in the best interests of the children was not clearly erroneous. *In re JK*, 468 Mich at 209-210.

There were no errors warranting relief.

Affirmed.

/s/ Michael J. Kelly
/s/ Kurtis T. Wilder
/s/ Kirsten Frank Kelly