*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JLS,

                     Petitioner-Appellee,

v

HRS,

                     Respondent-Appellant.

FOR PUBLICATION
September 12, 2024
9:05 a.m.

No. 368375
Clinton Circuit Court
LC No. 23-31320-PP

Before: PATEL, P.J., and YATES and SHAPIRO,* JJ.

YATES, J.

From Runnymede in 1215, to the hot summer in Philadelphia in 1787, to the ratification of the Fourteenth Amendment in 1868, due process has been recognized as a bedrock principle of all constitutional systems. In its most basic terms, due process requires notice and the opportunity to be heard before a deprivation of the right to life, liberty, or property may be visited upon a person. *Dow v Michigan*, 396 Mich 192, 205-206; 240 NW2d 450 (1976). Here, the trial court properly entered a personal protection order (PPO) against respondent, HRS, on an ex parte basis, but later denied respondent's motion to terminate the PPO after reviewing "the lengthy statement made by the [p]etitioner in support of the [ex parte] personal protection order" and then taking the testimony of petitioner, JLS, and her witnesses at the hearing on respondent's motion to terminate the PPO. Although respondent's counsel asked for an opportunity to present witnesses, the trial court denied that request based on the shortage of time due to docket congestion. Because the one-sided hearing violated respondent's due process rights, we reverse and remand for a new hearing.

## I. FACTUAL BACKGROUND

Petitioner and respondent have been married for 19 years. During their marriage, they had seven children together, one of whom died in 2011. On June 6, 2023, petitioner moved out of the marital home, and on July 5, 2023, she filed for divorce. On July 31, 2023, plaintiff filed a petition for a PPO arising from a domestic relationship. She attached to her petition a 17-page account of the parties' marriage from start to finish, and she also attached affidavits from her mother and her

_____

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

-1-

sister. The trial court granted her petition on July 31, 2023, and issued an ex parte PPO prohibiting respondent from "entering onto property where petitioner lives[,]" "assaulting, attacking, beating, molesting, or wounding" petitioner, stalking petitioner in any manner, interfering with petitioner's efforts to remove her children and personal property from the marital home, "threatening to kill or physically injure" petitioner, "intentionally causing petitioner mental distress or exerting control over petitioner[,]" and "purchasing or possessing a firearm."

On August 15, 2023, respondent filed a motion (with the assistance of counsel) requesting termination of the ex parte PPO. In a brief supporting the motion, respondent provided a detailed statement of facts that contested most of the allegations made in the documents petitioner attached to her petition for a PPO. Respondent's brief also asserted that petitioner "cannot demonstrate that [r]espondent has or is likely to commit any of the actions prohibited by MCL 600.2950(1)(b), (c), or (j)." Respondent's brief concluded by asking the trial court to "[t]erminate the ex parte Personal Protection Order entered July 31, 2023, effective immediately."

On October 18, 2023, the trial court conducted a combined hearing on a discovery motion in the parties' divorce case and respondent's motion to terminate the PPO. The hearing started at 1:04 p.m. with the trial court focusing first on the discovery motion. The attorney for respondent stated: "I was hoping we could take the PPO first given the implications of the PPO versus the motion to quash, I would hate to run out of time to finish the PPO while dealing with a discovery issue that can as easily be dealt with later in the month." Although petitioner's attorney responded, "I don't have any objection, Your Honor," the trial court stated: "Oh, we have an hour scheduled for both of these" motions. The trial court noted that "the motion to quash is something that could be handled quickly," so "it [would] be more prudent to just go forward with that and then we could start the PPO hearing after that." The trial court then heard the discovery motion and rendered its ruling on the contested discovery issues before turning to respondent's challenge to the PPO.

When the trial court took up the PPO contest, petitioner's counsel presented testimony from three witnesses—two of petitioner's relatives and then petitioner herself. Respondent's attorney asked very few questions of petitioner's relatives on cross-examination, but respondent's counsel cross-examined petitioner at greater length, which prompted extensive redirect examination by the attorney for petitioner. As soon as that redirect examination ended, the trial court commented that "the parties are here for our two o'clock hearing." The trial court then asked respondent's counsel: "is your client going to testify?" Respondent's counsel stated: "I'm in a difficult position because I want to make this expeditious for the Court, and I'm inclined to . . . renew my motion to terminate the personal protection order based strictly on [p]etitioner's proofs that she hasn't alleged anything that . . . would cause a reasonable person to have a fear of harm given the lack of violence over the years." But respondent's counsel explained that "I don't necessarily want to stop before presenting my entire case." Respondent's counsel concluded: "I would like to renew that motion and if the Court wishes to schedule us for more time and hold the ruling in abeyance then I will follow your lead."

The trial court then invited petitioner to step down from the witness stand, her counsel gave remarks explaining how petitioner had met her burden to support the PPO, and the trial court made its ruling "that the personal protection order should remain in effect." Respondent's attorney was not afforded the opportunity to provide comments addressing petitioner's counsel's remarks before the trial court rendered its decision. But after the trial court furnished its oral ruling denying relief

to respondent, the attorney for respondent asked: "Your Honor, when will we be allowed to present witnesses?" The trial court succinctly responded that "you made your motion and I'm denying it. And the [p]etitioner made her motion and I am grant—granting it." Following up on that comment, respondent's attorney asked: "So you're not allowing the [r]espondent to call any witnesses?" The trial court concluded: "Correct." The hearing thus ended at 2:14 p.m. In the wake of the hearing, the trial court issued an order on that very same day denying respondent's motion to terminate the PPO. Respondent then appealed.

## II. LEGAL ANALYSIS

On appeal, respondent challenges the trial court's initial issuance of the ex parte PPO. He also contends that the trial court violated his due process rights by depriving him of any meaningful opportunity to be heard on his motion to terminate the PPO. We will take up those two arguments in turn.

## A. ISSUANCE OF THE EX PARTE PERSONAL PROTECTION ORDER

As a threshold matter, respondent insists that the trial court should not have issued the PPO in the first place on July 31, 2023. The issuance of a PPO in the context of a domestic relationship, including a former dating relationship, is governed by MCL 600.2950. *TM v MZ*, 501 Mich 312, 315; 916 NW2d 473 (2018). Under MCL 600.2950(4), a trial court "shall" issue a PPO if the court "determines that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in [MCL 600.2950(1)]." "The petitioner bears the burden of establishing reasonable cause for issuance of a PPO[.]" *Hayford v Hayford*, 279 Mich App 324, 326; 760 NW2d 503 (2008). "The granting . . . of a PPO is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *SP v BEK*, 339 Mich App 171, 176; 981 NW2d 500 (2021). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Hayford*, 279 Mich App at 325.

In petitioner's 17-page statement supporting her petition for an ex parte PPO, she described a long history of controlling behavior exhibited by respondent. She disclaimed physical abuse by respondent, but she wrote about incidents of compelled sexual intimacy. She also detailed several incidents of persistent oversight at work that seem very much like impermissible stalking, but her statement leaves no doubt that she and respondent work at the same location, so his conduct could be more innocently characterized as jobsite supervision. Petitioner's description of an incident on June 6, 2023, includes an allegation of police involvement at the marital home resulting from the uncontrolled rage of respondent, which prompted petitioner to leave respondent and the marital home to lead a life without respondent.

Impermissible acts listed in MCL 600.2950(1) include "molesting" the petitioner, see MCL 600.2950(1)(b), "interfering with petitioner at petitioner's place of employment . . . or engaging in conduct that impairs petitioner's employment[,]" see MCL 600.2950(1)(g), and engaging in "[a]ny other specific act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence." See MCL 600.2950(1)(*l*). The petition for an ex parte PPO filed on July 31, 2023, contains allegations that could satisfy all three categories of impermissible acts. Therefore, although petitioner's allegations, if viewed from respondent's perspective, could be explained, we cannot conclude that the trial court committed an abuse of discretion by issuing

the ex parte PPO at petitioner's behest. Accordingly, we must leave undisturbed the trial court's decision to issue the ex parte PPO in the first place.

## B. VIOLATION OF DUE PROCESS AT THE MOTION HEARING

After an ex parte PPO is issued, pursuant to MCL 600.2950(13), the respondent may move to "modify or rescind" the PPO. Here, respondent filed a motion on August 15, 2023, to terminate the ex parte PPO.[1] That submission triggered an obligation on the part of petitioner to establish "a justification for the continuance of [the] PPO at a hearing on the respondent's motion to terminate the PPO." *Hayford*, 279 Mich App at 326. The trial court held that hearing on October 18, 2023, and imposed upon petitioner the burden of demonstrating that the PPO should remain in place, but respondent contends that the trial court violated his due process rights at that hearing by refusing to permit him to testify or present other evidence after petitioner's evidence was introduced. We review respondent's due process claim de novo as an issue of law, *Kampf v Kampf*, 237 Mich App 377, 381; 603 NW2d 295 (1999), noting that respondent preserved his constitutional challenge by objecting to the trial court's refusal to permit him to present evidence before the trial court rendered its ruling denying respondent's motion to terminate the PPO.

"The federal and Michigan constitutions guarantee that the state cannot deny people 'life, liberty, or property without due process of law.' " *Id*., citing US Const, Am XIV and Const 1963, art 1, § 17. This Court has upheld, in the face of a due process challenge, the initial issuance of an ex parte PPO without notice and an opportunity to be heard "when the petition for the emergency protection order is supported by affidavits that demonstrate exigent circumstances justifying entry of an emergency order without prior notice[.]" *Kampf*, 237 Mich App at 383. But crucial to that conclusion was the availability of "appropriate provisions for notice and an opportunity to be heard after the order is issued." *Id*. at 384. Here, we must determine what constitutes a constitutionally sufficient "opportunity to be heard after the order is issued." See *id*.

Our concern in this case is one of procedural due process, not substantive due process. See *IME v DBS*, 306 Mich App 426, 434; 857 NW2d 667 (2014) (addressing denial of "a meaningful opportunity to be heard" in response to issuance of a PPO as a matter of "procedural due process"). By dint of statute, i.e., MCL 600.2950(13), and court rule, i.e., MCR 3.707(A)(2), a respondent is entitled to a hearing after filing a motion to terminate a PPO. But neither the relevant statute nor the governing court rule explains what such a hearing must entail to comport with the due process guarantees of the federal and Michigan Constitutions. This Court has found reversible error when the respondent in a PPO matter "was not properly afforded the opportunity to be heard by the trial court for his motion to terminate as required by the court rules," *CAJ v KDT*, 339 Mich App 459, 469; 984 NW2d 504 (2021), but the denial of "the opportunity to be heard" in the instant case was not as absolute as in that case, where no hearing at all occurred. Therefore, we must look elsewhere

---

[1] The PPO in this case expired by its own terms on January 31, 2024, but respondent's challenge is still viable because "identifying an improperly issued PPO as rescinded is a live controversy and thus not moot." *TM*, 501 Mich at 319.

-4-

for guidance on the meaning of "the opportunity to be heard" in the context of motions to terminate ex parte PPOs that actually involve hearings.

We find a starting point for our analysis in this Court's unpublished decision in *Peterson v Peterson*, unpublished per curiam opinion of the Court of Appeals, issued June 7, 2006 (Docket No. 283188), p 5. There, this Court agreed that "the trial court was required to hold the hearing" on a motion to terminate a PPO "and 'to allow [respondent] a meaningful opportunity to challenge the merits of the Ex Parte PPO.' " *Id*. That language makes clear that the promise of a hearing on a motion to terminate a PPO is empty if the respondent does not receive "a meaningful opportunity to challenge the merits of the . . . PPO." See *id*. Such a meaningful opportunity requires not only the invitation to argue against the validity of the PPO, but also the willingness to receive evidence from the respondent. Under due process principles, "[t]he opportunity to be heard does not mean a full trial-like proceeding, but it does require a hearing to allow a party the chance to know and respond to the evidence." *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995). A respondent confronted with damaging evidence is hamstrung without the ability to "respond to the evidence" by presenting evidence that tends to contradict or undermine the damaging evidence. Therefore, due process necessarily mandates an opportunity for the respondent to present evidence at a hearing to terminate a PPO.

In this case, the trial court devoted a portion of a 70-minute hearing to respondent's motion to terminate the PPO, but the trial court allowed only petitioner to present evidence in the form of testimony from herself and two of her relatives. After petitioner finished testifying, the trial court heard arguments from petitioner's counsel and denied respondent's motion to terminate the PPO based on the materials attached to the ex parte petition and the testimony of petitioner's witnesses. When respondent's attorney asked the trial court "when will we be allowed to present witnesses?" the trial court simply stated that "you made a motion and I'm denying it." That one-sided process contravened respondent's constitutional right to procedural due process.[2] Thus, for constitutional reasons, we must reverse the trial court's denial of respondent's motion to terminate the PPO and remand the case for a prompt hearing on the motion that comports with due process.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Sima G. Patel
/s/ Douglas B. Shapiro

---

[2] Petitioner states "Respondent-Appellant's due process rights were not violated by preventing him from testifying or presenting evidence during the hearing on his motion to terminate the ex parte personal protection order entered against him because . . . his attorney requested a directed verdict after Petitioner-Appellee's case concluded where Petitioner-Appellee, solely, had the reasonable cause burden to meet." But under MCR 2.516, "[i]f the motion for a directed verdict is not granted, the moving party may offer evidence without having reserved the right to do so, as if the motion had not been made." Accordingly, neither the motion for a directed verdict by respondent nor the trial court's denial of that motion diminished respondent's right to present evidence.