*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PM,

        Petitioner-Appellee,

v

BAB,

        Respondent-Appellant.

UNPUBLISHED
September 22, 2025
9:44 AM

No. 369869
Oakland Circuit Court
LC No. 2023-519727-PP

Before: GADOLA, C.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

Respondent appeals as of right a personal protection order (PPO) entered by the trial court for the protection of petitioner. Respondent argues the evidence did not support the PPO because respondent did not have any contact with petitioner for 18 months before the PPO was granted, and that it was error to refuse to admit the results of respondent's polygraph examination. We affirm.

The parties met, fell in love, and were engaged within four months of their initial meeting. As the wedding date approached, the parties' relationship began to deteriorate after respondent found e-mails and texts from a former girlfriend on petitioner's phone. Petitioner testified that respondent became very angry and reacted with physical violence toward petitioner. The parties' relationship ended in August 2022, two weeks before their scheduled wedding, when respondent found more e-mails and texts from petitioner's former girlfriend. Respondent physically attacked petitioner by hitting him on the head, biting him, and scratching his arms and hands. Respondent threw petitioner's belongings into the hallway in front of their apartment. A security guard and two police officers stood by as petitioner packed his belongings and left the apartment. Although respondent did not personally contact petitioner after August 2022, petitioner filed a petition for a PPO on April 27, 2023, after learning of another assault respondent allegedly perpetrated against one of respondent's close friends, which included an angry outburst regarding petitioner. After an evidentiary hearing that was spread over eight months, the trial court granted petitioner's request for a PPO.

Respondent first argues that the trial court abused its discretion by granting the petition for a PPO because there was insufficient evidence to support a PPO, especially in light of the lengthy period of time between the parties' last contact and the issuance of the PPO. We disagree.

We review a trial court's decision to issue a PPO for an abuse of discretion. *CAJ v KDT*, 339 Mich App 459, 463; 984 NW2d 504 (2021). "An abuse of discretion occurs when the court's decision falls outside the range of principled outcomes." *Id*. at 463-464. This Court reviews the trial court's findings of fact for clear error and its questions of law de novo. *Id*. at 464. "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Id*. In addition, we defer " 'to the special opportunity of the trial court judge to judge the credibility of the witnesses who appeared before it.' " *SP v BEK*, 339 Mich App 171, 176; 981 NW2d 500 (2021), quoting MCR 2.613(C). The trial court "has the advantage of being able to consider the demeanor of the witnesses in determining how much weight and credibility to accord their testimony." *Id*. (quotations marks and citation omitted).

The applicant for a PPO bears the burden of establishing reasonable cause to obtain a PPO. *CNN v SEB*, 345 Mich App 151, 160; 4 NW3d 759 (2023). Petitioner properly filed his petition for a domestic relationship PPO pursuant to MCL 600.2950(1), because the parties had been in a dating relationship and were members of the same household. *TT v KL*, 334 Mich App 413, 439; 965 NW2d 101 (2020).

MCL 600.2950(1) provides that a party "may petition the family division of circuit court to enter a personal protection order to restrain . . . an individual with whom he or she has or has had a dating relationship" from the following:

> (a) Entering onto premises.
>
> (b) Assaulting, attacking, beating, molesting, or wounding a named individual.
>
> (c) Threatening to kill or physically injure a named individual.
>
> * * *
>
> (e) Purchasing or possessing a firearm.
>
> * * *
>
> (g) Interfering with petitioner at petitioner's place of employment or education or engaging in conduct that impairs petitioner's employment or educational relationship or environment.
>
> * * *
>
> (j) Engaging in conduct that is prohibited under section 411h or 411i of the Michigan penal code, 1931 PA 328, MCL 750.411h and 750.411i.

If the trial court "determines that there is reasonable cause to believe" that the respondent may commit any of the acts listed in MCL 600.2950(1), the trial court shall issue a PPO. MCL 600.2950(4).

In determining whether to issue a PPO pursuant to MCL 600.2950, a trial court shall consider "[t]estimony, documents, or other evidence offered[,]" MCL 600.2950(4)(a), and "[w]hether the individual to be restrained or enjoined has previously committed or threatened to commit 1 or more of the acts listed in subsection (1)," MCL 600.2950(4)(b). "MCL 600.2950 and MCL 750.411h dictate contemplation of all relevant present and past incidents arising between the parties." *PF v JF*, 336 Mich App 118, 130; 969 NW2d 805 (2021).

In his petition, petitioner requested a PPO pursuant to MCL 600.2950, alleging that respondent had physically assaulted him three times between July 2022 and August 2022. Petitioner testified that on July 8, 2022, when the parties were visiting respondent's family residence in Harbor Springs, respondent attacked her mother. When petitioner attempted to help his future mother-in-law, respondent elbowed him in the eye causing bruising on his eye and nose. On July 30, 2022, as the parties were preparing to leave their apartment, respondent took petitioner's phone and saw texts from his former girlfriend. Petitioner testified that respondent wielded a pair of scissors in a threatening manner and petitioner ran into the bathroom. When petitioner left the bathroom, he ran from respondent into their closet. Respondent jumped on his back and began fighting petitioner for his phone. When they left the apartment and began driving, respondent grabbed the steering column and tried to shift the vehicle into a different gear.

Petitioner testified that on August 5, 2022, and August 6, 2022, respondent hit him repeatedly on the ear and the head, bit several parts of his body, and scratched his arms and hands. Petitioner testified that he was unable to fight back or defend himself because he would not hit respondent. Respondent threw petitioner's belongings into the hallway outside of their apartment and informed petitioner that they would not be getting married in two weeks. As petitioner was packing his belongings into his vehicles, he waved down two police officers who were in the parking garage. Petitioner asked the officers to stand by while he packed his belongings because respondent kept interfering and throwing his belongings. After petitioner left the apartment and checked into a hotel, respondent followed petitioner there. The hotel had to change petitioner's room after respondent requested a wellness check on petitioner and followed the hotel security guard up to the room. Respondent demanded to be let inside and tried to slip past the security guard to gain access to petitioner's room. Respondent would not leave the hotel, prompting the hotel employees to call the police.

Petitioner testified that he filed his petition in April 2023 because a close friend of respondent's called petitioner to inform him of respondent's violent and erratic behavior during a recent bachelorette trip. The friend told petitioner that respondent was still angry and upset with petitioner. Petitioner testified that respondent's continued erratic behavior gave him reasonable cause to fear that respondent would attack him again. Respondent denied that she ever physically assaulted petitioner.

In its findings of fact, the trial court found that in June 2022, respondent became unhappy in the relationship because she discovered that petitioner had been in contact with a former girlfriend. The trial court inferred that this unhappiness resulted in respondent's ultimate physical

assault on petitioner on August 5, 2022, and August 6, 2022. The trial court did not find respondent's testimony to be credible. The trial court found that there was reasonable cause to believe that respondent would "commit one or more of the violent or harassing acts identified in the statute, specifically, assaulting, attacking, beating, molesting, or wounding the petitioner, [or] engaging in conduct that is prohibited under MCL Section 750.411h and 750.[4]11i." Because of the close proximity of the parties' residences in Harbor Springs, the trial court thought that a PPO for six months would afford petitioner protection through the summer months.

Although respondent argues that the trial court should have denied petitioner's request for a PPO because respondent had not contacted petitioner for eight months, this Court has held that "MCL 600.2950 and MCL 750.411h dictate contemplation of all relevant present and past incidents arising between the parties." *PF*, 336 Mich App at 130. Petitioner presented "evidence of two or more acts of unconsented contact that caused the victim to suffer emotional distress and that would cause a reasonable person to suffer emotional distress." *Hayford v Hayford*, 279 Mich App 324, 330; 760 NW2d 503 (2008), citing MCL 750.411h(1)(a). In addition, respondent previously assaulted, attacked, and wounded petitioner, which are acts listed in MCL 600.2950(1). MCL 600.2950(4)(b).

This Court has upheld the entry of PPOs in situations where the parties had not had contact for long periods of time. In *IME v DBS*, 306 Mich App 426, 428-429; 857 NW2d 667 (2014), the petitioner and respondent had not had contact for over two years at the time the petition for PPO was filed. However, when the petitioner saw respondent at a football game, the petitioner became scared and filed a request for a PPO. *Id*. at 429. The trial court granted the PPO on the ground that respondent had committed a sexual assault against petitioner two years earlier. *Id*. This Court affirmed the PPO, holding that a PPO may be issued on the basis of a single prior sexual assault against the petitioner pursuant to MCL 600.2950a(2)(a). *Id*. at 441-443. Here, the parties had not had contact for eight months at the time the petition for PPO was filed. However, the petitioner presented sufficient evidence of an assault, albeit not a sexual assault, that occurred eight months earlier to justify the trial court's issuance of the PPO.

Respondent also argues that because the Troy City Attorney declined to charge respondent with any crime related to the alleged assaults, the trial court's finding that the assault on August 5, 2022, did in fact occur, was clearly erroneous. This argument is without merit. The statute requires the trial court to find there is "reasonable cause to believe that the person to be restrained or enjoined may commit 1 or more of the acts listed in subsection (1)." MCL 600.2950(4). "That is, the petitioner can obtain a PPO against the person to be enjoined without having to prove that the person has actually done anything illegal." *IME*, 306 Mich App at 442. "Similarly, a petitioner can obtain a restraining order under MCL 600.2950a(1) by alleging that the person to be restrained engaged in acts that constitute stalking without the need to show that the person to be restrained has actually been charged or convicted of violating the applicable statutes." *Id*. Here, petitioner presented sufficient evidence in the form of testimony, photos, and videos for the trial court to find that he was assaulted by petitioner on August 5, 2022. This Court defers to the trial court to judge the credibility of the witnesses who appeared before it. See *SP*, 339 Mich App at 176. Petitioner was not required to present evidence that respondent was charged with assault. See *IME*, 306 Mich App at 442. The petitioner only needed to present objective evidence to support his subjective, reasonable apprehension of future harm. The petitioner presented evidence that respondent had harmed him in the past, had harmed a friend months later, and that petitioner continued to see

respondent and her family in Harbor Springs during the duration of the proceedings. It was not unreasonable for petitioner to fear future harm by respondent when their paths continued to cross after the parties' relationship ended. Therefore, we cannot conclude that the trial court's decision to grant petitioner's request for a PPO fell outside the range of principled outcomes. *CAJ*, 339 Mich App at 563. The trial court did not abuse its discretion by entering the PPO.

Respondent also argues that the trial court abused its discretion by its failure to admit the results of respondent's polygraph examination into evidence. We disagree.

We review a trial court's admission of evidence for an abuse of discretion. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). "[T]he proponent of evidence bears the burden of establishing relevance and admissibility." *Id.* (citation and quotation marks omitted).

"Results of a polygraph examination are not admissible at trial in criminal or civil cases." *Sullivan v Michigan*, 328 Mich App 74, 84; 935 NW2d 413 (2019). "Polygraph results are inadmissible because there is simply no consensus that polygraph evidence is reliable." *Id.* (quotation marks and citation omitted). Polygraph results have only been considered at the discretion of the trial court in a postconviction hearing for a new trial in a criminal case. *Id.*

This Court in *Sullivan* considered the Michigan Supreme Court's rationale for considering polygraph results in a postconviction motion, but not as evidence in a criminal trial, and adopted it as to the plaintiff's civil claim:

> [T]he procedure at trial and at a post-conviction hearing for new trial is different and significantly so. The procedures are significantly different because their purposes are significantly different. The purpose of a trial is to determine the guilt or innocence of the defendant. The purpose of a post-conviction hearing for a new trial is, as its name suggests, an action to determine whether there should be such a trial. It is a preliminary, not a final procedure. [*Id.* at 85, quoting *People v Barbara*, 400 Mich 352, 415; 255 NW2d 171 (1977).]

This Court reasoned that if the plaintiff's claim proceeded to a civil trial, the plaintiff would have to prove the defendant's liability on the merits. *Sullivan*, 328 Mich App at 85. Polygraph results are not admissible to prove guilt or liability in a trial on the merits. *Id.*

Here, the trial court had to assess the parties' credibility and determine if its factual findings met the statutory requirements to issue a PPO. The PPO evidentiary hearing constituted a final procedure in which the trial court determined whether a PPO was warranted, which included determining whether respondent assaulted petitioner. Because this evidentiary hearing is more akin to a trial on the merits rather than a post-conviction hearing, polygraph results are not admissible. Consequently, the trial court did not abuse its discretion by failing to admit the results of respondent's polygraph examination into evidence.

Affirmed.

/s/ Michael F. Gadola
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock