Fitzgerald, J.
 

 Respondent John E. Kampf appeals as of right an order denying his motion to quash, suppress, rescind, or dismiss a personal protection order (PPO) obtained ex parte by his wife, petitioner Noell Kampf, pursuant to MCL 600.2950(4) and (12); MS 27A.2950(4) and (12). Respondent asserts that subse. tion 2950(12) is unconstitutional because it depriv him of his property rights and limits his right to li erty by subjecting him to the possibility of arrest an"
 
 *379
 
 prosecution without notice or procedural safeguards. We affirm.
 
 [1]
 

 On December 12, 1997, Noelle Kampf petitioned the court to enter an ex parte PPO to restrain and enjoin respondent from entering onto the property where petitioner lived and worked, from assaulting petitioner, from stalking petitioner, and from threatening to kill or injure petitioner. Petitioner asserted that she was requesting the order because she feared that “immediate and irreparable injury, loss, or damage will occur between now and a hearing or because notice itself will cause irreparable injury, loss, or damage before the order can be entered.”
 

 Consistent with the provisions in MCL 600.2950(4)(a); MSA 27A.2950(4)(a), petitioner attached a two-page narrative to her petition explaining why she believed she needed a PPO. In the statement she recalled several instances of emotional and physical abuse and controlling behavior by respondent. She noted that respondent called her “filthy” names, humiliated her, denied her “access” to money, and required her to return home immediately after her classes ended in order to control her. She described an occasion in 1994 when respondent came home in the afternoon as she was feeding her two small children and began to fondle her in front of them. When she rebuffed him, she claimed, respondent pulled her so forcefully that she held onto the sink to resist him, but he eventually dragged her by
 
 *380
 
 her legs through the house to the bedroom where he had sex with her. She also recalled an incident on September 9, 1997, when respondent had sex with her in a “very insensitive and rough” manner, which left her bruised, bleeding, and in pain. Petitioner claimed that respondent had sex with her two days later despite the fact that she was crying from the pain of her recent injuries. She also said that on October 21, 1997, respondent became enraged that she was sleeping, so he began screaming that she was a “lazy asshole” and a “bitch” before he “yanked” her out of bed and pushed her out of the bedroom. She claimed that he bruised her arm in this incident and continued to be verbally and emotionally abusive for the next few days. In conclusion, petitioner told the court that it was “depressing” for her to see respondent and that because he was “manipulative” and “sarcastic” she wanted to limit her contact with him other than making “brief contact as required regarding [their] children.”
 

 On the basis of petitioner’s allegations, the court granted the petition and issued a three-year ppo on December 12, 1997. In addition to granting petitioner’s specific requests for no contact, the court order prohibited respondent from contacting petitioner by telephone and from purchasing or possessing firearms. The record indicates that petitioner served a copy of the PPO on respondent by certified United States mail on December 23, 1997. However, respondent’s motion to quash the ppo indicates that he became aware of the ppo on December 19, 1997.
 

 Respondent’s motion to quash did not challenge the truthfulness of petitioner’s allegations of abuse. Instead, respondent argued that MCL 600.2950(12);
 
 *381
 
 MSA 27A.2950(12), which permits issuance of an ex parte ppo, is unconstitutional because it deprives him of his property rights and limits his right to liberty by subjecting him to the possibility of arrest and prosecution without notice or procedural safeguards.
 

 In her answer to respondent’s motion to quash, petitioner factually supplemented the statement she had attached to the ppo petition. She provided documentation of three times she had stayed at a domestic violence shelter, a more detailed and extensive narrative statement regarding abuse by respondent, and photographs of bruises that respondent allegedly caused.
 

 The trial court denied respondent’s motion to quash the ppo in a written ruling after the parties stipulated the waiver of oral arguments. The trial court reasoned that respondent’s property rights must yield to petitioner’s concern for safety, that the ppo statute provides a sufficient number of procedural safeguards for an ex parte application, and that a ppo furthers an important governmental interest in preventing crime and improving public safety. On appeal, respondent challenges the trial court’s conclusion that the PPO statute, and hence the PPO against him, are constitutional. This Court reviews constitutional issues de novo as questions of law.
 
 Mahaffey v Attorney General,
 
 222 Mich App 325, 334; 564 NW2d 104 (1997).
 

 The federal and Michigan constitutions guarantee that the state cannot deny people “life, liberty, or property without due process of law.” US Const, Am XTV; Const 1963, art 1, § 17. Due process, which is similarly defined under both constitutions,
 
 Palmer v Bloomfield Hills Bd of Ed,
 
 164 Mich App 573, 576; 417 NW2d 505 (1987), specifically enforces the rights
 
 *382
 
 enumerated in the Bill of Rights, and it also provides for substantive and procedural due process.
 
 Daniels v Williams,
 
 474 US 327, 337; 106 S Ct 662; 88 L Ed 2d 662 (1986). Procedural due process limits actions by the government and requires it to institute safeguards in proceedings that affect those rights protected by due process, such as life, liberty, or property. See
 
 Electro-Tech, Inc v HF Campbell Co,
 
 433 Mich 57, 66, n 9; 445 NW2d 61 (1989);
 
 Dow v Michigan,
 
 396 Mich 192, 202; 240 NW2d 450 (1976).
 

 A statute is presumed constitutional unless the contrary is plainly evident.
 
 People v Hubbard (After Remand),
 
 217 Mich App 459, 483-484; 552 NW2d 493 (1996). Respondent, as the party who is challenging the constitutionality of the ppo statute, bears the burden of showing this clear unconstitutionality.
 
 Brown v Siang,
 
 107 Mich App 91, 97; 309 NW2d 575 (1981). “If the statute can be construed in a manner consistent with the constitution, the party alleging unconstitutionality has failed to meet that burden.”
 
 Id.
 

 A. ENFORCING ENUMERATED RIGHTS
 

 In his motion to quash, respondent asserted that the PPO statute and orders issued under its authority violated numerous rights specifically mentioned in the federal or Michigan constitutions. On appeal, respondent argues only that the statute unconstitutionally prohibits him from “purchasfing] or possess [ing] a firearm which eliminates the possibility of hunting or other sporting events . . . .” Respondent’s firearm argument appears to invoke the right to bear
 
 *383
 
 arms under the Michigan Constitution.
 
 [2]
 
 Although “[e]very person has a right to keep and bear arms for the defense of himself and the state,” Const 1963, art 1, § 6, the Michigan Constitution does not protect the right to bear arms in the context of sport or recreation. Cf.
 
 People v Swint, 225
 
 Mich App 353, 362; 572 NW2d 660 (1997).
 
 [3]
 

 B. PROCEDURAL DUE PROCESS
 

 Respondent contends that subsection 12 violates the due process guarantee of notice and an opportunity to be heard.
 
 People v Pitts, 222
 
 Mich App 260, 263; 564 NW2d 93 (1997). We disagree. There is no procedural due process defect in obtaining an emergency order of protection without notice to a respondent when the petition for the emergency protection order is supported by affidavits that demonstrate exigent circumstances justifying entry of an emergency order without prior notice, see, e.g.,
 
 Mitchell v WT
 
 
 *384
 

 Grant,
 
 416 US 600; 94 S Ct 1895; 40 L Ed 2d 406 (1974), and where there are appropriate provisions for notice and an opportunity to be heard after the order is issued. See
 
 id.; Gargagliano v Secretary of State,
 
 62 Mich App 1, 11; 233 NW2d 159 (1975). Here, subsection 12 permits a court to issue an ex parte order only if
 

 it clearly appears from specific facts shown by verified complaint, written motion, or affidavit that
 
 immediate and irreparable injury, loss, or damage will result from the delay required to effectuate notice or that the notice will itself precipitate adverse action before a personal protection order can be issued.
 
 [Emphasis added.]
 

 Further, MCL 600.2950(13); MSA 27A.2950(13) gives a respondent the right to bring a motion to rescind a PPO within fourteen days of being served with notice or receiving actual notice of the PPO, and MCL 600.2950(14); MSA 27A.2950(14) requires the court to schedule a hearing on the motion within five or fourteen days, depending on whether the ppo enjoins the respondent from purchasing and possessing a firearm. Clearly, the procedural safeguards employed under the statute are sufficient to meet respondent’s due process challenge.
 

 Respondent contends, nonetheless, that the notice requirement is insufficient because one restrained by an ex parte ppo could be arrested for violating a ppo without ever knowing that the ppo had been issued.
 
 [4]
 
 However, the Legislature appreciated this very
 
 *385
 
 dilemma between an effective date and notice to a respondent and crafted subsection 22 to resolve the conflict. Subsection 22 provides in pertinent part:
 

 If the individual restrained or enjoined has not received notice of the personal protection order, the individual restrained or enjoined shall be given an opportunity to comply with the personal protection order before the law enforcement officer makes a custodial arrest for violation of the personal protection order. [MCL 600.2950(22); MSA 27A.2950(22).]
 

 Thus, although a PPO is effective at the time it is signed by a judge,
 
 [5]
 
 a respondent can avoid arrest for a first violation if the respondent lacks notice and ceases the behavior that violates the order. Therefore, the ex parte application of the statute provides prompt postorder notice to respondent without penalty for inadvertent violation of the order.
 

 Respondent vaguely suggests that the ex parte format may be abused because the statute does not impose a burden of proof on a petitioner. We disagree. When the court holds a hearing before issuing a PPO, the petitioner bears the burden of providing evidence that shows that there is “reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the” violent or harassing acts identified in subsection l.
 
 [6]
 
 MCL 600.2950(4); MSA 27A.2950(4). In cases in which an ex parte order is sought, the petitioner must show that the danger is imminent and that the delay to notify the respondent is intolerable or in itself dangerous. MCL 600.2950(12); MSA 27A.2950(12). Although
 
 *386
 
 neither of these provisions specifically state that the burden of proof is on the petitioner, the burden of proof naturally falls on the petitioner under subsections 4 and 12 because the court must make a positive finding of prohibited behavior by the respondent before issuing a ppo.
 

 Affirmed.
 

 [1]
 

 In his brief on appeal, respondent makes many statements that are arguably intended to be arguments. However, many of the statements are made without argument or authority in support thereof and, therefore, we decline to address any issue not properly presented.
 
 Wilson v Taylor,
 
 457 Mich 232, 243; 577 NW2d 100 (1998);
 
 People v Kelly,
 
 231 Mich App 627, 641; 588 NW2d 480 (1998).
 

 [2]
 

 The Second Amendment of the federal constitution does not apply to the states.
 
 Miller v Texas,
 
 153 US 535, 538; 14 S Ct 874; 38 L Ed 2d 812 (1894).
 
 People v Swint,
 
 225 Mich App 353, 359-360; 572 NW2d 666 (1997).
 

 [3]
 

 Respondent has never argued that the restraint against his right to possess and purchase firearms has prohibited him from defending himself or the state. Even if respondent’s argument is interpreted to implicate the right to bear arms, this Court has held that the right may yield to a legislative enactment that represents a reasonable regulation by the state in the exercise of its police power to protect the health, safety, and welfare of Michigan citizens.
 
 People v Smelter,
 
 175 Mich App 153, 155-156; 437 NW2d 341 (1989). The ppo statute is clearly addressed to protecting the health, safety, and welfare of victims of domestic violence. Further, subsection 2 of the statute, MCL 600.2950(2); MSA 27A.2950(2), specifically requires a petitioner to notify the court if a respondent must carry a firearm as part of his job. That provision permits the court to make a judgment regarding whether a ppo that would prohibit the respondent from possessing or purchasing a firearm would affect his constitutional right to defend the state. Therefore, any restriction on the right to bear arms is a reasonable exercise of the police powers of the state.
 

 [4]
 

 Respondent erroneously contends that the ppo itself does not give notice of the right to challenge the injunction. To the contrary, paragraph 8 of the order states that “[Respondent may file a motion to modify or rescind this order. Forms and instructions are available from the clerk of the court.”
 

 [5]
 

 MCL 600.2950(9); MSA 27A.2950(9).
 

 [6]
 

 MCL 600.2950(1); MSA 27A.2950Q).