*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRN,

        Petitioner-Appellee,

v

MDG,

        Respondent-Appellant.

UNPUBLISHED
October 15, 2019

No. 345306
Lenawee Circuit Court
LC No. 18-045578-PP

Before: FORT HOOD, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

The trial court granted petitioner's ex parte motion for a personal protection order (PPO). Respondent promptly filed a motion to terminate the PPO, which the court denied after holding an evidentiary hearing. Respondent appeals, arguing that petitioner's testimony at the hearing did not establish grounds to uphold the ex parte PPO. We agree for the reasons stated in this opinion and so reverse.

## I. BACKGROUND

On August 6, 2018, petitioner sought an ex parte PPO under MCL 600.2950 (domestic relationship) and MCL 600.2950a (stalking). The petition informed that the parties were in a dating relationship and resided in the same household. In a statement attached to the petition, petitioner explained why she was requesting the PPO. She explained that, three weeks prior, respondent had made suicidal statements and that she had found him in bed the next morning with a five-inch blade or knife. Then, three days before the filing of the petition, respondent came into petitioner's bedroom yelling at her and criticizing her appearance. She said that she asked respondent to leave her room, but the "verbal abuse" continued. Petitioner said that her minor son had not been staying at the home because she feared for both their safety.

-1-

On the basis of those allegations, the court granted the petition and issued a one-year PPO effective until August 7, 2019.[1]  The PPO prohibited respondent from (1) entering onto the property where petitioner lived, (2) assaulting her, (3) stalking behavior as defined by MCL 750.411h and MCL 750.411i, (4) threatening to kill or physically injure petitioner, (5) interfering with her at her place of employment, (6) having access to records concerning her child, (7) intentionally causing her stress or exerting control over her, and (8) purchasing a firearm.

Respondent then filed a motion to terminate the ex parte PPO.  He asserted that petitioner had not met the statutory requirements for a PPO.  He also denied the allegations contained in the petition.

At the August 21, 2018 motion hearing, petitioner was cross-examined by respondent's counsel regarding the allegations.  Her testimony provided additional details, some of which contradicted or at least clarified the statements made in the petition.  She testified that she never heard respondent make suicidal statements; rather he had purportedly made those statements at a party to his friends, who then informed petitioner.  When respondent left the party, he said that he was going to his own apartment.  Instead, he went to the home jointly owned by the parties and that was previously owned by respondent's family.  Petitioner was later accompanied by respondent's friends to the parties' shared home; respondent told the friends that he was going to bed, and the friends recommended that petitioner not stay at the home that night.  She agreed because she felt unsafe.  As for the blade or knife she saw in respondent's bed the next morning, she said that it may have been part of a tool.  She agreed that there were ongoing renovations in the home and that there were other tools around.  She was not questioned about the insulting comments that respondent made to her at a later date, but she said that respondent never threatened her or her son.  Petitioner agreed that she decided to seek a PPO after respondent asked her to move out of the jointly-owned home.

The trial court found that petitioner's decision not to stay at the home the night respondent made suicidal statements demonstrated "bona fide fear."  The court also found that petitioner's description of respondent entering her bedroom and yelling and criticizing her "described an escalation of that fear."  The court then concluded that the statutory requirements for a PPO had been satisfied and therefore denied respondent's motion to terminate the PPO.

## II. ANALYSIS

Respondent argues that the trial court erred in denying his motion to terminate the ex parte PPO.[2]  We agree.[3]

---

[1] We agree with respondent that the expiration of the PPO does not render his appeal moot.  See *TM v MZ*, 501 Mich 312, 319; 916 NW2d 473 (2018) ("[I]dentifying an improperly issued PPO as rescinded is a live controversy and thus not moot.").

[2] Respondent also argues that the issuance of the ex parte PPO was erroneous.  That is a much closer question, however, given that the court was confined to the allegations presented in the petition.  Specifically, it is unclear whether those allegations established that petitioner was in

"[A] petitioner bears the burden of proof when seeking to obtain an ex parte PPO." *Pickering v Pickering*, 253 Mich App 694, 651; 659 NW2d 649 (2002). That burden continues when the respondent seeks to terminate an ex parte PPO. *Id.* at 651-652.

Respondent contends that there was insufficient evidence for the trial court to issue a PPO under MCL 600.2950a, prohibiting stalking. To obtain a PPO under that statutory section, the petitioner must allege "facts that constitute stalking as defined" by MCL 750.411h.[4] That statutes defines "stalking" as

> a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested. [MCL 750.411h(1)(d).]

And "course of conduct" means "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411h(1)(a).

The trial court found that respondent frightened petitioner on two separate occasions: (1) the suicidal statements he made to his friends the night of the party, causing petitioner to not return to the home until the next morning; and (2) the verbally abusive comments he made to petitioner weeks later. Respondent argues that these acts do not constitute harassment as defined by MCL 750.411h.

"Harassment" is defined in part as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional

---

danger of immediate and irreparable injury, loss or damage such that providing notice to respondent would have been untenable. See *Kampf v Kampf*, 237 Mich App 377, 385; 603 NW2d 295 (1999); MCL 600.2950(12); MCL 600.2950a(12). However, given our ruling that petitioner did not present sufficient evidence at the evidentiary hearing to obtain a PPO, we need not address whether the initial issuance was erroneous.

[3] We review a trial court's decision to grant or deny a PPO, including a respondent's motion to terminate a PPO, for an abuse of discretion. *Brown v Rudy*, 324 Mich App 277, 288; 922 NW2d 915 (2018). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Id.* "An error of law necessarily constitutes an abuse of discretion." *Denton v Dep't of Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016). We review the trial court's factual findings for clear error. *Hayford*, 279 Mich App at 326. Questions of statutory interpretation are reviewed de novo. *Buchanan v Crisler*, 323 Mich App 163, 175; 922 NW2d 886 (2018).

[4] MCL 600.2950a(1) also refers to MCL 750.411i (aggravated stalking) and MCL 750.411s (cyberstalking), neither of which are at issue in this case. Accordingly, we will refer only to MCL 750.411h (stalking).

distress." MCL 750.411h(1)(c). Further, "unconsented conduct" is defined as "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." MCL 750.411h(1)(e).

We agree with respondent that his alleged comments about committing suicide do not constitute conduct directed at petitioner.[5] It is undisputed that respondent made those comments to his friends, not petitioner. There is no suggestion that respondent told his friends to relay his statements to petitioner, or that he intended that result. Rather, it appears that respondent's friends decided on their volition to share those statements with petitioner. For the same reasons, we agree with respondent that his suicidal statements do not constitute unconsented contact with petitioner. The same can be said for respondent's decision to go to the parties' shared home after he left the party instead of his own apartment as he originally planned. There is no indication that respondent did not have petitioner's consent to return to the parties' jointly owned home, or that his decision to do so was directed at petitioner. Thus, this act cannot be considered as unconsented contact directed toward her. Similarly, petitioner's observation of a blade or knife in respondent's bed the following morning does not satisfy the definition of harassment. There is no evidence suggesting that respondent placed the blade or knife in his bed to frighten or threaten petitioner. At worst, an inference can be drawn that respondent contemplated hurting himself. But that does not constitute unconsented conduct directed at petitioner, especially when petitioner testified that respondent has never threatened to harm her or her son.

To be clear, we are not overruling the trial court's finding that petitioner was genuinely frightened by respondent's actions. But fear alone does not establish stalking. The statutory criteria for harassment—that were not addressed by the trial court—are plainly not satisfied by respondent's suicidal statements and his corresponding behavior.

As noted, stalking is a willful course of conduct that requires two or more separate acts. MCL 750.411h(1)(a). See also *Hayford v Hayford*, 279 Mich App 324, 330; 760 NW2d 503 (2008) ("There must be evidence of two or more acts of unconsented contact that caused the victim to suffer emotional distress and that would cause a reasonable person to suffer emotional distress."). We disagree with respondent that the trial court erred in finding that the insulting comments he made directly to petitioner constituted harassment, i.e., unconsented conduct directed at petitioner that caused her emotional distress. Respondent allegedly made those comments after petitioner asked him to leave her alone, and he continued even after she asked that he leave her room. However, that is only one instance of unwanted contact and therefore does not constitute stalking as defined by MCL 750.411h. See *Poburskey v Gee*, 249 Mich App 44, 48; 640 NW2d 597 (2001) (holding that the trial court erred in issuing a PPO under MCL 600.2950a when the petitioner alleged a single series of continuous events). Accordingly,

---

[5] On appeal, respondent provides an affidavit in which he denies ever making suicidal statements. But a party may not expand the record on appeal. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). That said, we note that respondent denied petitioner's allegations in his motion to terminate the PPO.

petitioner did not allege facts that constitute stalking and so the trial court did not have authority to issue a PPO under MCL 600.2950a(1).[6]

The PPO was also issued pursuant to MCL 600.2950, which governs domestic-relationship PPOs. *TM v MZ*, 501 Mich 312, 315; 916 NW2d 473 (2018). That is clear from the fact that the PPO prohibits more than just stalking activity; it also precludes respondent from engaging in behavior identified in MCL 600.2950(1), such as assaulting or threatening petitioner. To issue a domestic-relationship PPO, the court must determine "that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in subsection (1)." MCL 600.2950(4). "The trial court must consider the testimony, documents, and other evidence proffered and whether the respondent had previously engaged in the listed acts." *Hayford*, 279 Mich App at 326, citing MCL 600.2950(4).

Here, however, the trial court did not address MCL 600.2950 or find reasonable cause to believe that respondent would commit an act identified in MCL 600.2950(1). In other words, the trial court did not make "a positive finding of prohibited behavior" as required by MCL 600.2950(4). *Kampf v Kampf*, 237 Mich App 377, 386; 603 NW2d 295 (1999). Nor can it be said that petitioner carried her burden to show reasonable cause that respondent committed or would have committed one of the violent, threatening or harassing acts identified in MCL 600.2950(1). In the absence of such evidence, the trial court erred in issuing the PPO. See *Brown v Rudy*, 324 Mich App 277, 295; 922 NW2d 915 (2018).

In summary, we conclude that the trial court abused its discretion in denying respondent's motion to terminate the ex parte PPO. Respondent's alleged suicidal behavior was not unconsented contact directed at petitioner. Therefore, it did not constitute harassment as defined by MCL 750.411h and could not serve as part of the course of conduct required to show stalking. The court also erred by failing to address whether there was reasonable cause that respondent would commit one of the acts identified in MCL 600.2950(1), and petitioner did not carry her burden of proof on that matter.

Respondent also argues that his due-process rights were violated when the trial court precluded him from testifying at the evidentiary hearing. This issue was not properly preserved because respondent's counsel never made it clear to the court that respondent wished to testify. That said, at the hearing respondent and his counsel made references to respondent testifying, which the trial court ignored. The better practice would have been for the court to hear

---

[6]  We also question whether there was evidence that the two alleged incidents were sufficiently related so as to demonstrate "acts evidencing a continuity of purpose." MCL 750.411h(1)(a).

respondent's testimony or address whether it was waived. However, in light of our ruling, we need not decide whether respondent's due-process rights were violated.[7]

Reversed.

/s/ Karen M. Fort Hood
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

---

[7] We also decline to address respondent's contention that the PPO violated his First Amendment "right to insult" petitioner. See MCL 750.411h(1)(c) ("Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.").