*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DU,

Petitioner-Appellee,

v

CU,

Respondent-Appellant.

UNPUBLISHED
April 13, 2023

No. 359622
Livingston Circuit Court
Family Division
LC No. 21-056628-PP

Before: GADOLA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order denying his motion to terminate an ex parte personal protection order (PPO) entered in favor of petitioner. We reverse and remand for entry of an order granting respondent's motion.

## I. FACTS

On November 25, 2021, Thanksgiving Day, petitioner and respondent, who were then husband and wife, had an argument while at their home. During the argument, petitioner asked respondent to give her some space. According to respondent, he went upstairs and changed his clothes, then went outdoors and sat in his van, where he eventually fell asleep. Respondent later explained to the trial court that he did not drive the van anywhere because he was still emotional from the argument and thought it would be unwise to drive.

According to petitioner, before leaving the home respondent said that he was going to kill himself, and she therefore grew afraid because she knew that respondent kept a gun in his van. Respondent testified that he is an electrician and regularly works in dangerous neighborhoods in Detroit, and therefore has a concealed pistol license (CPL) and keeps a pistol in his van for protection while working. Respondent denied that he said he was going to kill himself, and also testified that on the day of the argument petitioner had been smoking marijuana. Petitioner agreed that she uses marijuana, but could not remember whether she had been using it on the day of the argument. Both petitioner and respondent agreed that respondent did not threaten petitioner in any way, either verbally or physically, and did not access the gun nor brandish it.

-1-

While respondent slept in the van, petitioner texted his phone. When respondent did not reply, she texted her mother and respondent's mother, then called the police and told them she was afraid respondent might shoot her and take his own life. Respondent awoke in the van to discover police officers outside the van. The officers took respondent to a hospital for evaluation, where he was released within two hours after medical personnel concluded that he was not suicidal.

Two days later, petitioner filed for divorce and sought an ex parte PPO. In her petition, she alleged that on November 25, 2021, she "was absolutely terrified that he would kill me and then himself."[1] On November 29, 2021, the trial court granted petitioner an ex parte PPO against respondent, which was to remain in effect until November 29, 2022. Respondent timely moved to terminate the PPO on the basis that petitioner had falsely represented that he had threatened to kill himself.

The trial court denied respondent's motion to terminate the PPO. The trial court explained that it found respondent to be credible, but also thought it likely that respondent had threatened to kill himself, which frightened petitioner. The trial court stated that the decision was "a very close call" and that resolution of the motion "could have gone either way," but "in this time in our world, people are doing very serious things that would scare a lot of people." The trial court further stated that "I think in order to make the Petitioner feel safe during this divorce, I am going to sign an order. I'm continuing the PPO." Respondent now appeals.

## II. DISCUSSION

---

[1] Petitioner also alleged that in 2017 respondent threw a handrail from a dog gate at her. The couple nonetheless were married in 2018. Petitioner alleged that thereafter, in 2019, respondent threw a vase at her head during an argument. In denying the motion to terminate the ex parte PPO, the trial court discussed the allegations of earlier conflict between the parties, but based its decision solely upon the events of November 25, 2021. The dissent suggests that the trial court erred by limiting its consideration to events close in time to the November 2021 incident and failing to consider the allegations and testimony regarding the parties' earlier disputes. We note that the trial court did not fail to consider the allegations of earlier disputes; the trial court discussed the allegations, but stated that it was not giving any weight to the parties' contentions about those disputes. How much weight, if any, to accord a given piece of evidence is the sole prerogative of the fact-finder. *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 156; 908 NW2d 319 (2017). The trial court's decision to accord more weight to some evidence and none to other evidence was well within its discretion as fact-finder, and this Court does not interfere with the trial court's determinations on such matters. See *Berger v Berger*, 277 Mich App 700, 715; 747 NW2d 336 (2008). If, however, we were to examine the parties' allegations about their earlier disputes, it would be necessary to consider respondent's testimony that the parties' 2017 dispute was precipitated by *petitioner* driving away after declaring in front of her daughter and respondent that *she* was going to kill *herself*, thus engaging in the same conduct in 2017 that she found so dire when respondent acted similarly in 2021.

Respondent contends that the trial court abused its discretion by denying his motion to terminate the ex parte PPO against him.[2] We agree.

We review for an abuse of discretion the trial court's decision to grant or deny a PPO, as well as the trial court's decision on a respondent's motion to terminate a PPO. *CAJ v KDT*, 339 Mich App 459, 463; 984 NW2d 504 (2021). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Berryman* v Mackey, 327 Mich App 711, 717; 935 NW2d 94 (2019). A trial court necessarily abuses its discretion when it makes an error of law. *CAJ*, 339 Mich App at 464. We review for clear error the trial court's underlying factual findings. *CNN v SEB*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359007); slip op at 4. A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. *Berryman*, 327 Mich App at 717-718. We review de novo questions of statutory interpretation. *Le Gassick v Univ of Mich Regents*, 330 Mich App 487, 495; 948 NW2d 452 (2019).

PPOs in the context of domestic relationships are governed by MCL 600.2950. See *TM v MZ*, 501 Mich 312, 315; 916 NW2d 473 (2018). MCL 600.2950(1) states, in relevant part:

> [A]n individual may petition the family division of circuit court to enter a personal protection order to restrain or enjoin a spouse . . . from doing 1 or more of the following:
>
> (a) Entering onto premises.
>
> (b) Assaulting, attacking, beating, molesting, or wounding a named individual.
>
> (c) Threatening to kill or physically injure a named individual.
>
> (d) Removing minor children from the individual having legal custody of the children, except as otherwise authorized by a custody or parenting time order issued by a court of competent jurisdiction.
>
> (e) Purchasing or possessing a firearm.
>
> (f) Interfering with petitioner's efforts to remove petitioner's children or personal property from premises that are solely owned or leased by the individual to be restrained or enjoined.
>
> (g) Interfering with petitioner at petitioner's place of employment or education or engaging in conduct that impairs petitioner's employment or educational relationship or environment.

---

[2] Although the PPO has expired, the issue on appeal is not rendered moot. See *TM v MZ*, 501 Mich 312, 319; 916 NW2d 473 (2018).

(h) If the petitioner is a minor who has been the victim of sexual assault, as that term is defined in section 2950a, by the respondent and if the petitioner is enrolled in a public or nonpublic school that operates any of grades K to 12, attending school in the same building as the petitioner.

(i) Having access to information in records concerning a minor child of both petitioner and respondent that will inform respondent about the address or telephone number of petitioner and petitioner's minor child or about petitioner's employment address.

(j) Engaging in conduct that is prohibited under [MCL 750.411h (stalking) or MCL 750.411i (aggravated stalking)].

(k) Any of the following with the intent to cause the petitioner mental distress or to exert control over the petitioner with respect to an animal in which the petitioner has an ownership interest.

(*i*) injuring, killing, torturing, neglecting, or threatening to injure, kill, torture, or neglect the animal. A restraining order that enjoins conduct under this subparagraph does not prohibit the lawful killing or other use of the animal as described in section 50(11) of the Michigan penal code, 1931 PA 328, MCL 750.50.

(*ii*) Removing the animal from the petitioner's possession.

(*iii*) Retaining or obtaining possession of the animal.

(*l*) Any other specific act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence.

An ex parte PPO is a "restraining order granted without notice" under MCR 3.310(B)(5). *Pickering v Pickering*, 253 Mich App 694, 698; 659 NW2d 649 (2002). MCL 600.2950(12) provides:

A court shall issue an ex parte personal protection order without written or oral notice to the individual restrained or enjoined or his or her attorney if it clearly appears from specific facts shown by a verified complaint, written motion, or affidavit that immediate and irreparable injury, loss, or damage will result from the delay required to effectuate notice or that the notice will itself precipitate adverse action before a personal protection order can be issued.

An individual who is restrained or enjoined by an ex parte PPO issued under MCL 600.2950(12) may file a motion to modify or rescind the PPO and request a hearing. MCL 600.2950(13). When a respondent moves to dissolve a restraining order granted without notice, the petitioner must justify the continuation of the PPO. MCR 3.310(B)(5) provides, in relevant part:

. . . At a hearing on a motion to dissolve a restraining order granted without notice, the burden of justifying continuation of the order is on the applicant for the restraining order whether or not the hearing has been consolidated with a hearing on a motion for a preliminary injunction or an order to show cause.

Under MCL 600.2950(4), a trial court must issue a PPO if the trial court determines that there is reasonable cause to believe that the person to be restrained may commit an act stated in MCL 600.2950(1). MCL 600.2950(4) provides:

The court shall issue a personal protection order under this section if the court determines that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in [MCL 600.2950(1)]. In determining whether reasonable cause exists, the court shall consider all of the following:

(a) Testimony, documents, or other evidence offered in support of the request for a personal protection order.

(b) Whether the individual to be restrained or enjoined has previously committed or threatened to commit 1 or more of the acts listed in subsection (1).

Thus, a trial court must issue a PPO if it determines that reasonable cause exists to believe that the respondent may commit one or the more of the acts listed in MCL 600.2950(1). The trial court, however, "must make a positive finding of prohibited behavior by the respondent before issuing a PPO." *SP v BEK*, 339 Mich App 171, 181; 981 NW2d 500 (2021), quoting *Kampf v Kampf*, 237 Mich App 377, 386; 603 NW2d 295 (1999). The burden of establishing reasonable cause for the issuance of the PPO, and the burden of establishing justification for the court to continue a PPO upon a motion to terminate an ex parte PPO, is upon the person petitioning the court for the PPO. *SP*, 339 Mich App at 181.

We conclude that the trial court in this case abused its discretion by denying respondent's motion to terminate the PPO. The trial court did not make a positive finding of prohibited behavior by respondent before issuing the PPO, and petitioner did not establish justification for continuing the PPO upon respondent's motion to terminate the PPO. See *SP*, 339 Mich App at 181; MCR 3.310(B)(5). The only act alleged against respondent is that he stated that he was going to kill himself. Respondent left the couple's home on November 25, 2021 because petitioner asked him to give her "space." Petitioner agreed that respondent did not verbally or physically threaten her in any way, but that she nonetheless became afraid for her own safety because of respondent's statement. Petitioner testified that she could not remember whether she had been using marijuana at the time of the incident.[3]

---

[3] As the dissent accurately notes, petitioner testified that she did not remember whether she had been using marijuana that day. She testified in detail regarding the events of that day, including a detailed description of respondent's conduct, who she called, what was said, and the extent of her

After leaving the home at petitioner's request, respondent did not engage in any conduct to justify petitioner's fear. When police arrived, respondent was sleeping in his van. He cooperated with police and participated in evaluation at a hospital, where he was quickly determined not to be suicidal and was released. In the days following the incident and leading up to the hearing on his motion, respondent did not engage in any "act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence." See MCL 600.2950(1)(*l*). The only basis found by the trial court to support the PPO was petitioner's allegation that she became afraid when respondent stated that he was going to kill himself. The trial court found the decision to be "a very close call" whether a PPO was warranted, and that the decision "could go either way," but concluded that current events in general were frightening and speculated that petitioner might be comforted if a PPO were issued against respondent. The PPO was thus continued not because respondent had engaged in any prohibited conduct, but to allay petitioner's general fearfulness. The record thus is insufficient to meet petitioner's burden to justify continuation of the PPO.

In addition, the evidence presented by petitioner was insufficient to support a finding of reasonable cause to believe that respondent might in the future commit an act prohibited under MCL 600.2950(1). As discussed, under MCL 600.2950(4), a trial court must issue a PPO if the trial court determines that there is reasonable cause to believe that the person to be restrained may commit an act stated in MCL 600.2950(1). Here, the only alleged prohibited conduct by respondent was his alleged statement that he would harm himself. The only support for this allegation is petitioner's uncorroborated testimony that he made this statement.[4]

The trial court was in the best position to assess the credibility of the witnesses, and we do not weigh the credibility of the witnesses on appeal. *Brandt v Brandt*, 250 Mich App 68, 74; 645 NW2d 327 (2002). In this case, however, the trial court found both petitioner and respondent credible, found the case to be a close call, but nonetheless chose to defer to the uncorroborated

---

fear. She also testified that if she used marijuana that day, she used an amount that did not affect her or heighten her emotions. That is, she remembered how much she used if she used it, and what effect it had on her if she used it, but did not remember whether she used it. And she remembers everything else that occurred that day with great clarity, even though perhaps she was using marijuana, which she testified had no effect on her if she used it. But she did not remember whether she used it.

[4] The dissent observes that "[a] domestic violence victim's testimony can be believed as credible even if uncorroborated." We agree. Nonetheless, we observe that the only evidence supporting the PPO is petitioner's statement that respondent threatened to harm himself. The trial court found this statement by petitioner credible, and we give regard to the special opportunity of the trial court to judge the credibility of the witnesses that appear before it. MCR 2.613(C). But, like the trial court, we are constrained by the concepts of burden of proof and sufficiency of the evidence. Petitioner, whether a domestic violence victim or not, had the burden to justify continuation of the PPO. Similarly, the trial court was required to make a positive finding of prohibited conduct by respondent before issuing the PPO. See *SP*, 339 Mich App at 181. Petitioner's lone statement, even accepted as credible, neither carries her burden of proof nor supports a positive finding of prohibited conduct by respondent.

-6-

version of events presented by petitioner, who admitted that she did not remember if she was using marijuana on the day of the events in question. Although we do not second-guess the trial court's finding that petitioner experienced fear, her fear alone is not sufficient to meet petitioner's burden to justify continuation of the PPO. Nor did petitioner demonstrate reasonable cause to believe that respondent may commit an act prohibited under MCL 600.2950(1) in the future. Accordingly, the trial court abused its discretion by denying respondent's motion to terminate the PPO.

The trial court's order is reversed, the PPO is vacated, and this matter is remanded to the trial court, with instructions that the PPO be updated in LEIN as having been rescinded. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Kristina Robinson Garrett