*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* VH.

BB,

Petitioner-Appellee,

v

VH,

Respondent-Appellant.

UNPUBLISHED
December 11, 2025
3:04 PM

No. 370352
Kent Circuit Court
LC No. 21-003427-PP

Before: M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order finding him guilty of criminal contempt for violating a personal protection order (PPO), MCL 600.2950a(23), arguing that the trial court violated his due-process rights by failing to find beyond a reasonable doubt that he willfully violated the PPO. We affirm.

## I. FACTUAL BACKGROUND

Petitioner and respondent previously dated but never had children together. In April 2021, petitioner sought an ex parte PPO, which the trial court granted. The PPO prohibited respondent from entering petitioner's property and from contacting her by any means of communication. The PPO also apprised respondent that any violation of the PPO would subject him to the criminal-contempt powers of the trial court. A process server filed an affidavit of service attesting that respondent was personally served with the PPO.

In March 2022, petitioner moved to extend the PPO. Petitioner alleged that respondent repeatedly contacted her through unidentified phone numbers, left two voicemails, and appeared on a doorbell camera recording on her property. The trial court granted the motion and extended the PPO until March 2023.

-1-

In November 2022, the trial court ordered a show-cause hearing. A process server filed a proof of service affidavit that confirmed personal service of the order on respondent. Respondent appeared at the show-cause hearing the following month and pleaded not guilty. When respondent failed to appear at the subsequent violation hearing, the trial court ordered a bench warrant for respondent's arrest. Thereafter, petitioner filed a second motion to extend, which the trial court granted. The trial court extended the PPO until March 2028. Respondent was later arrested and arraigned on the bench warrant.

After two adjournments, the trial court held the violation hearing in February 2024. Before the bench trial began, the trial court heard testimony on respondent's motion alleging improper service of the PPO and its extension. Petitioner testified that she asked her nephew to serve respondent with the original PPO. Petitioner further testified that her nephew confirmed that he served respondent on April 24, 2021. That same day, petitioner received a text message from respondent, which she interpreted as confirmation that he had been served with the PPO. The prosecutor asked that the trial court take judicial notice "that the proof of service filed . . . was at 12:31 p.m. on April 24th, 2021." Hearing no objections, the trial court took notice. Nonetheless, respondent testified that he was never served personally or by mail. Ultimately, the trial court found "that service was proper of both the original [PPO], as well as the extension." Relevant to this appeal, the trial court also noted that "[t]he standard of proof, or burden of proof, is a preponderance . . . , which is very low."

The trial court then heard testimony about whether respondent violated the PPO. Petitioner testified about numerous unidentified phone calls that she received and believed to be from respondent. The prosecutor played a voicemail left on petitioner's phone, which petitioner identified as respondent's voice. The prosecutor also played a doorbell camera recording, which showed that respondent approached petitioner's home, put his fingers over the camera, and knocked on the door. During respondent's subsequent testimony, he admitted that he was the person shown on the doorbell camera video, but he maintained that he was unaware of the PPO or its extension.

After hearing testimony from petitioner and respondent, the trial court stated:

[G]iven the fact that the Court has found previously that [respondent] did receive notice of this PPO, and—and that he should have known that—that [petitioner] did not want any contact with him, based on the PPO.

The Court finds by proof beyond a reasonable doubt that the respondent is guilty of criminal contempt. Even if I disregard the phone calls, the alleged—the alleged phone calls, it is clear that [respondent] did appear on the property after the PPO was issued, and frankly, the hand over the camera is very suspect to this Court.

So, I will find—find him guilty.

The trial court then imposed a 30-day jail sentence with credit for time served. Respondent now appeals.

## II. STANDARD OF REVIEW

We review a trial court's decision to hold a party in contempt for an abuse of discretion. *In re SB*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367014); slip op at 6. "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008). Whether a party has been afforded due process is a question of law subject to de novo review. See *Reed v Reed*, 265 Mich App 131, 157; 693 NW2 825 (2005).

"When examining the sufficiency of the evidence to support a criminal-contempt finding following a bench trial, this Court views the evidence presented in a light most favorable to the prosecution to determine if the elements of the crime were proven beyond a reasonable doubt." *In re JCB*, 336 Mich App 736, 747; 971 NW2d 705 (2021). A trial court's findings of fact underlying a PPO ruling are reviewed for clear error. *Hayford*, 279 Mich App at 325. "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *CAJ v KDT*, 339 Mich App 459, 464; 984 NW2d 504 (2021) (quotation marks and citation omitted). "We do not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings." *In re JCB*, 336 Mich App at 748.

## III. ANALYSIS

On appeal, respondent asks us to vacate his criminal-contempt conviction, arguing that the trial court violated his due-process rights by applying an incorrect standard of proof to criminal contempt before finding him guilty. Specifically, respondent contends that the trial court failed to find the "willful" element of criminal contempt beyond a reasonable doubt. We disagree.

"The federal and Michigan constitutions guarantee that the state cannot deny people 'life, liberty, or property without due process of law.' " *Kampf v Kampf*, 237 Mich App 377, 381; 603 NW2d 295 (1999), quoting US Const, Am XIV; Const 1963, art 1, § 17. MCL 600.2950(18) provides that a PPO "must be served personally or by registered or certified mail, return receipt requested, delivery restricted to the addressee at the last known address or addresses of the individual restrained or enjoined or by any other manner allowed by the Michigan court rules."

Pursuant to MCL 600.2950(23), "an individual who is 17 years of age or older and who refuses or fails to comply with a [PPO] . . . is subject to the criminal contempt powers of the court . . . ." "Criminal contempt is a quasi-crime because it is not intended to punish conduct proscribed as harmful by the general criminal laws, but rather is designed to serve the limited purpose of vindicating the authority of the court." *In re LT*, 342 Mich App 126, 134; 992 NW2d 903 (2022) (quotation marks and citation omitted). "A criminal-contempt proceeding requires some, but not all, of the due process safeguards of an ordinary criminal trial . . . ." *Id*. (quotation marks and citation omitted). "To establish criminal contempt, the charged party must have willfully disregarded or willfully disobeyed a court order." *Ferranti v Electrical Resources Co*, 330 Mich App 439, 445; 948 NW2d 596 (2019). The term "willful" is defined "as describing an action that is [v]oluntary and intentional, but not necessarily malicious." *People v Fennell*, 260 Mich App 261, 267; 677 NW2d 66 (2004), quoting *Black's Law Dictionary* (7th ed). "The

petitioner or the prosecuting attorney has the burden of proving the respondent's guilt of criminal contempt beyond a reasonable doubt . . . ." MCR 3.708(H)(3).

Respondent maintains that the trial court failed to apply the beyond-a-reasonable-doubt standard, specifically to the "willful" element of criminal contempt. Contrary to respondent's assertions, the trial court indisputably made its finding of criminal contempt beyond a reasonable doubt. Although the trial court first determined that service of the PPO and its extension was proper by a preponderance of the evidence in its handling of a separate motion, the trial court thereafter found at the violation hearing "by proof beyond a reasonable doubt that respondent is guilty of criminal contempt." The trial court's written order also made specific findings of fact, including that "[b]y proof beyond a reasonable doubt," respondent is guilty of criminal contempt. "A trial judge is presumed to know the law," including the applicable standard of proof, *Demski v Petlick*, 309 Mich App 404, 427; 873 NW2d 596 (2015) (quotation marks and citation omitted), and, in this case, the trial court stated the correct standard. See MCR 3.708(H)(3).

The evidence supports the trial court's finding that respondent willfully disregarded or willfully disobeyed a court order, i.e., the PPO, beyond a reasonable doubt. Respondent admitted that after the original PPO was issued, he contacted petitioner by telephone, entered petitioner's property, and appeared on her property in the doorbell camera recording. The PPO expressly prohibited respondent from contacting petitioner by telephone, entering petitioner's property, or sending any communications to petitioner. See MCL 600.2950(1). Respondent's admissions, combined with the doorbell recording and texts admitted at trial, establish multiple PPO violations.

Respondent testified that he did not know about the PPO at the time he committed this conduct. Although respondent denied any knowledge of the PPO, the trial court did not find this testimony credible. We do not weigh the credibility of the witnesses that appear before the trial court in determining whether there is evidence to support the trial court's findings. *In re JCB*, 336 Mich App at 748. Other evidence refuted respondent's argument that he lacked notice of the PPO. Petitioner testified that a process server served the PPO on respondent on April 24, 2021. That process server filed a proof of service of affidavit, and respondent did not object when the trial court took judicial notice of that filing. The same day the PPO was served on respondent, petitioner received text messages from respondent, in which respondent referred to the PPO. Petitioner also testified that respondent referred to "that fake PPO" during a phone call, in which petitioner reminded respondent of the PPO and told him not to call her. In its findings of fact, the trial court emphasized the doorbell recording, noting that respondent's act of putting his fingers over the doorbell camera was "very suspect" and demonstrated that respondent entered petitioner's property with knowledge that the PPO had been issued and that he was not supposed to be on petitioner's property. From this evidence, the trial court could conclude that respondent had notice of the PPO and willfully disregarded or disobeyed the PPO when he contacted petitioner and entered her property. Accordingly, sufficient evidence was presented to support the trial court's finding that respondent was guilty of criminal contempt beyond a reasonable doubt. See *In re JCB*, 336 Mich App at 747; *Ferranti*, 330 Mich App at 445.

IV. CONCLUSION

On this record, respondent's argument that the trial court violated his right to due process by failing to find the "willful" element of criminal contempt beyond a reasonable doubt is without

merit. Viewed in the light most favorable to petitioner, the evidence was sufficient to support the trial court's finding that respondent violated the PPO and was guilty of criminal contempt beyond a reasonable doubt.

Affirmed.


/s/ Michael J. Kelly
/s/ James Robert Redford
/s/ Kathleen A. Feeney