*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BMFC,

Petitioner-Appellant,

v

MSC,

Respondent-Appellee.

UNPUBLISHED
March 09, 2026
9:21 AM

No. 374354
Emmet Circuit Court
LC No. 2025-108614-PP

Before: WALLACE, P.J., and GARRETT and ACKERMAN, JJ.

PER CURIAM.

Petitioner, BMFC, sought a personal-protection order (PPO) against respondent, MSC, after she filed a complaint for divorce against him. She appeals by right the trial court's denial of her petition. She also challenges the trial court's previous order denying her request to issue the PPO on an ex parte basis. Because the trial court did not err by denying BMFC's petition, on an ex parte basis or otherwise, we affirm.

## I. FACTUAL BACKGROUND

BMFC, proceeding *in propria persona*, filed a petition for an ex parte PPO against MSC on January 2, 2025, shortly after she initiated divorce proceedings against him. In her affidavit in support of the petition, she stated that she lived with MSC until March 3, 2024, at which point the couple separated. She stated that, on that date, MSC "bruised his son's face up and kept him from school." She also indicated that MSC had been "hacking into accounts" and changing information, and that he snuck onto her father's property and banged on the door to force her to come to the door. BMFC claimed that MSC physically and mentally abused her and the children in their home for years and had previously threatened to harm or kill both his son and his son's mother. She stated she feared that MSC would try to harm her or the children after she served him with her complaint for divorce that week.

The trial court denied BMFC's request for an ex parte PPO, stating she failed to demonstrate that "immediate irreparable injury, loss, or damage would occur" if the PPO was not granted on an ex parte basis. The court provided BMFC 14 days to request a hearing or the court would dismiss the petition. BMFC requested a hearing at which she testified that her attorney filed

-1-

a complaint for divorce on her behalf in Cheboygan County, where BMFC lived. When asked why she filed her PPO petition in Emmet County, rather than Cheboygan County, BMFC responded that she worked in Emmet County and was able to file the petition at the courthouse on a workday. She also explained that she had not yet filled out the PPO paperwork when her attorney filed her divorce complaint, and her domestic-violence advocate believed the PPO would be denied.

BMFC testified that she wanted a PPO against MSC because she feared for her life and had lived in fear for her life for years. When asked what her fear was based on, she responded:

> That is based on sleep deprivation, continued abuse, daily abuse, screaming at me every single day, alienating me from my family, from my friends, tracking my locations, beating on children, forcing me to lie regarding beating on children, threats of reporting me for tax fraud to ruin my career.

BMFC maintained that she and MSC separated in March 2024 and that, around that time, MSC hit his eight-year-old son who lived with them. The police and Child Protective Services (CPS) were contacted because of the incident.

BMFC testified that she last had direct contact with MSC via text message in July 2024 when he purportedly locked her out of her cell-phone account. In November 2024, she discovered when she renewed her license-place tabs at the Secretary of State that MSC had changed the mailing address associated with the vehicle to his address. She also alleged that MSC harassed her boss by creating fake social-media accounts and commenting on her employer's Facebook page. She asserted that she discovered a social-media post in which members of MSC's family admitted that they had harassed her boss and neighbors for months. BMFC claimed she was fearful of MSC because she was "working through PTSD," MSC was generally abusive physically and mentally, and she "got screamed at and spit on every day." She was treated by a therapist, a psychiatrist, and a psychologist, and recently scheduled an appointment with another therapist who specialized in PTSD. She denied that MSC had physically appeared at her work but claimed he "stalked" her work and her TikTok account.

BMFC's brother provided a written statement on her behalf and testified that he had often observed BMFC upset, scared, and anxious. He heard MSC raise his voice at BMFC and believed that MSC was irrational and became angry easily. He feared that MSC could engage in violence with BMFC but denied witnessing any physical violence between MSC and BMFC. He characterized MSC's conduct as "degrading" and "relentless" emotional abuse that included financial abuse, such as threatening to open a separate bank account and to skip work, resulting in financial harm for the family.

MSC denied harassing BMFC or engaging in any activity that involved her employment. He testified that he stopped using Facebook years previously and did not have a TikTok account. He shared a cell-phone account with BMFC and logged onto the account using his cell phone or e-mail address. He changed his address at the Secretary of State, which automatically changed the address associated with BMFC's vehicle because his name was on the title. MSC admitted going

to the home of BMFC's father, where BMFC lived in August 2024,[1] but denied banging on the door and getting "into her father's face." MSC called the police afterward, and an officer told him that BMFC's father did not want him to come back to the house. MSC denied attempting to contact BMFC after that incident and claimed that he did not know where she worked until she stated where she worked when she testified. Finally, he maintained that he shared joint custody of his son with his son's mother and had never been charged with child abuse.

The trial court asked BMFC if she had evidence of the Facebook messages posted on her employer's Facebook page. BMFC responded that her employer had deleted the messages. The court then asked whether BMFC had any witnesses who could testify regarding that matter. BMFC stated that her boss could testify, but he was not at the hearing. She referred the court to the police report. The court reviewed the report and remarked that it was "pretty limited." The report stated that BMFC reported to the police that MSC harassed her on Facebook since she began working at a new job. The police officer encouraged BMFC to complete the paperwork to obtain a PPO and to report the harassment to Facebook.

The trial court denied BMFC's petition. The court found credible BMFC's testimony that she suffered emotional abuse during the marriage and had been diagnosed with PTSD, but the court stated, "I don't think there's enough evidence here for the personal protection order." The court explained that a PPO prohibits conduct "that's occurred that ought not to be occurring," such as stalking. The court determined that BMFC failed to present evidence that MSC was stalking her at work or interfering with her job and remarked, "The problem with it is that anyone can create a Facebook page." The court determined it lacked evidence indicating that MSC, or his family members on his behalf, made the Facebook postings, and BMFC had no direct contact with MSC since August 2024. The court advised BMFC that she would "have a little bit more of a remedy" if she had filed her PPO petition in the same court as her divorce proceeding and recommended that the parties consider a mutual no-contact order in their divorce case. Further, the court admonished MSC, stating, "Just because I'm not granting the PPO doesn't mean that I don't find that there's some evidence here that's of concern to the Court." The court advised MSC that if he or his family members interfered with BMFC's ability to work and earn an income, it would have negative consequences for him in the divorce proceeding. The court concluded:

> So with that, I'm going to deny the request for the PPO. I don't think the evidence has risen to the level that the Court can find that it was the defendant [sic] that was interfering in late December and early January. That really would be the basis of this particular point because he's not had contact with you and, you know, there's been no evidence that he's been over to your home since that August event when he was told by the police not to go back. So this doesn't mean that down the road you can't seek a PPO. I'm going to tell you right now, though, that it would be best to have all your cases heard by your circuit judge [in the divorce case].

---

[1] Because MSC went to the home to retrieve his belongings, it appears he also lived there before the couple separated.

The court entered a written order stating that it denied the petition on the basis that there did not exist reasonable cause to believe that MSC may commit an act listed in MCL 600.2950(1). This appeal followed.

## II. STANDARDS OF REVIEW

We review for an abuse of discretion a trial court's decision to grant or deny a PPO petition. *CAJ v KDT*, 339 Mich App 459, 463; 984 NW2d 504 (2021). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Powers v Brown*, 328 Mich App 617, 620; 939 NW2d 733 (2019) (quotation marks and citation omitted). We review for clear error the trial court's factual findings underlying its PPO ruling. *CAJ*, 339 Mich App at 464. "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *SP v BEK*, 339 Mich App 171, 176; 981 NW2d 500 (2021) (quotation marks and citation omitted). Likewise, we defer to the trial court's special opportunity to view the demeanor of witnesses and determine the weight and credibility to be accorded to their testimony. *Id*.

## III. DISCUSSION

"Two different statutes, MCL 600.2950 and MCL 600.2950a, provide for three types of PPOs in Michigan." *TM v MZ*, 501 Mich 312, 315; 916 NW2d 473 (2018). "The nature of the petitioner's relationship with the respondent and the respondent's acts govern which form of PPO is appropriate." *Id*. (quotation marks and citation omitted). MCL 600.2950 governs PPOs when the parties are in a domestic relationship. *Id*. Under MCL 600.2950(1), a person may file a petition for a PPO requesting the court to restrain the respondent from engaging in certain conduct, including:

(a) Entering onto premises.

(b) Assaulting, attacking, beating, molesting, or wounding a named individual.

(c) Threatening to kill or physically injure a named individual.

\* \* \*

(e) Purchasing or possessing a firearm.

\* \* \*

(g) Interfering with petitioner at petitioner's place of employment or education or engaging in conduct that impairs petitioner's employment or educational relationship or environment.

\* \* \*

(j) Engaging in conduct that is prohibited under section 411h [stalking] or 411i [aggravated stalking] of the Michigan penal code, 1931 PA 328, MCL 750.411h and 750.411i.

-4-

* * *

(*l*) Any other specific act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence.

In addition, MCL 600.2950(4) states:

The court shall issue a personal protection order under this section if the court determines that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in subsection (1). In determining whether reasonable cause exists, the court shall consider all of the following:

(a) Testimony, documents, or other evidence offered in support of the request for a personal protection order.

(b) Whether the individual to be restrained or enjoined has previously committed or threatened to commit 1 or more of the acts listed in subsection (1).

Notably, a petitioner is not required to show that the respondent "actually committed one of the acts listed in MCL 600.2950(1), only that there was reasonable cause to believe that he *may* commit one of the acts." *SP*, 339 Mich App at 187. "The burden of proof in obtaining a PPO is on the applicant for the restraining order." *CNN v SEB*, 345 Mich App 151, 160; 4 NW3d 759 (2023) (alterations omitted).

BMFC first argues that the trial court erred by denying her PPO petition based in part on venue, contrary to MCR 3.703(E)(1). That provision states, "If the respondent is an adult, the petitioner may file a personal protection action in any county in Michigan regardless of residency." BMFC asserts that, because MSC is an adult, venue was irrelevant, but the trial court nevertheless focused on venue and questioned her extensively regarding why she did not file her PPO petition in the same court as her divorce proceeding.

The record shows that the trial court did not improperly focus on venue as BMFC asserts. When the court asked BMFC whether a divorce complaint had been filed, she responded that her attorney filed the divorce proceeding in Cheboygan County. The court reasonably inquired why BMFC did not also file the PPO petition in Cheboygan County. At the end of the proceeding, the court stated that "the downfall" was that the PPO proceeding and the divorce action were not before the same judge because BMFC would have "a bit more of a remedy" available to her considering that the evidence did not support a PPO. The court suggested a mutual no-contact order as a possible remedy but indicated that it could not grant such an order because the divorce case was not before it. The court did not determine that venue was improper and did not deny BMFC's petition, to any extent, based on venue.

BMFC next argues that the trial court erred by suggesting a mutual no-contact order because no evidence indicated that she presented any danger to MSC. BMFC's argument lacks merit because the trial court did not find that BMFC presented a danger to MSC. Rather, as previously stated, the court suggested a possible remedy for BMFC because the evidence did not support issuing a PPO.

BMFC also contends that the trial court abused its discretion by denying the PPO despite finding her claims of abuse during the marriage credible. She asserts that the court's finding was inconsistent with its ultimate determination. Our review of the record reveals that the trial court's findings and legal conclusion were not inconsistent. The court found credible BMFC's testimony that she was in counseling and had been diagnosed with PTSD because of emotional abuse she suffered during the marriage. The court did not conclude, however, that the emotional abuse and the other evidence BMFC presented satisfied one or more of the factors set forth in MCL 600.2950(1). "[T]he court must make a positive finding of prohibited behavior by the respondent before issuing a PPO." *Kampf v Kampf*, 237 Mich App 377, 386; 603 NW2d 295 (1999). The court clarified with BMFC that MSC had not directly contacted her since August 2024, more than four months before she filed her petition, and BMFC responded affirmatively. The court therefore focused on the Facebook messages, which occurred more recently, but determined that no evidence indicated MSC had posted the messages. Further, the court's admonishment of MSC, stating it found some of BMFC's evidence concerning, and its decision to allow BMFC to leave the courthouse before MSC "so that [they didn't] have to have any communication with each other," were not inconsistent with its ruling denying the PPO because BMFC failed to establish one of the requirements listed in the statute.

Finally, BMFC argues that the trial court erred by denying her request for an ex parte PPO on the basis that she failed to demonstrate immediate irreparable injury, loss, or damage. She asserts that her petition and accompanying affidavit showed that MSC appeared unannounced at the home she shared with her father, he changed account login information to force her to have contact with him, and he "bruised his son's face up." In addition, the affidavit stated that MSC was "always prepared" to shoot his son's mother during MSC's legal proceedings with her, and BMFC intended to serve MSC with a divorce complaint the same week that she filed her petition.

MCL 600.2950(12) provides

> A court shall issue an ex parte personal protection order without written or oral notice to the individual restrained or enjoined or his or her attorney if it clearly appears from specific facts shown by a verified complaint, written motion, or affidavit that *immediate and irreparable injury, loss, or damage* will result from the delay required to effectuate notice or that the notice will itself precipitate adverse action before a personal protection order can be issued. [Emphasis added.]

The trial court did not clearly err by determining that BMFC's petition and affidavit failed to establish that "immediate and irreparable injury, loss, or damage" would result if MSC was provided notice of the petition. Most of BMFC's allegations in her affidavit were too stale to support a finding of immediate harm. The affidavit stated that MSC physically assaulted his minor child in March 2024, and he appeared at her home on August 31, 2024. That date was BMFC's most recent direct contact with MSC before she filed her petition on January 2, 2025, more than four months later. Moreover, BMFC's allegation that MSC changed the address associated with her vehicle in November 2024 did not allege irreparable harm.

Further, BMFC's allegation that MSC was "always prepared" to shoot his son's mother during his legal proceeding involving her did not establish that BMFC was in danger. Although BMFC stated that MSC would be served with her divorce complaint the same week that she filed

her petition, she did not allege that MSC had taken any steps to physically harm his son's mother during his previous legal proceeding with her. Rather, BMFC simply stated that he had been "always prepared" to do so. Viewed together with BMFC's claim that MSC last had direct contact with her more than four months previously, along with the absence of a specific allegation involving a physical assault or threatened assault against her, the trial court did not clearly err by determining that BMFC failed to establish a threat of immediate and irreparable injury, loss, or damage if MSC was provided notice of the petition.

Affirmed.

/s/ Randy J. Wallace
/s/ Kristina Robinson Garrett
/s/ Matthew S. Ackerman